F. FRANCIS D'ADDARIO *v.* PLANNING AND ZONING
COMMISSION OF THE TOWN OF DARIEN

ERNEST DUHAIME ET AL. *v.* PLANNING AND ZONING
COMMISSION OF THE TOWN OF DARIEN
(6854)

DUPONT, C. J., FOTI and LANDAU, Js.

Argued March 19—decision released June 25, 1991

*Michael N. Lavelle,* with whom, on the brief, was *James D'Alton Murphy,* for the appellant (defendant).

*Frank W. Murphy,* with whom was *Barbara L. Coughlan,* for the appellee (plaintiff in the first case).

*Ridgely W. Brown,* with whom, on the brief, was *Heather M. Brown,* for the appellees (plaintiffs in the second case).

DUPONT, C. J. The plaintiffs in these two cases brought administrative appeals to the trial court from a 1985 zone change enacted by the defendant planning and zoning commission of the town of Darien (commission).[1] The trial court sustained the plaintiffs' appeals, holding that the action of the commission in rezoning a certain area from commercial to residential amounted to a taking of properties without just compensation in violation of both the state and federal constitutions.[2] Upon certification from this court, the commission appealed.

The dispositive issue in this appeal is whether the trial court properly determined that a taking had occurred as a result of the commission's rezoning.

Certain facts are pertinent to the resolution of this issue. The zone change involved a total area of 19.2 acres. The D'Addario parcel contains 9.8 acres, and the Duhaime parcel, which is contiguous to it, contains 3.72 acres. The remaining 5.6 acres involved in the change

---

[1] The trial court consolidated the two appeals because the 1985 zone change, which rezoned land from commercial to residential, involved only the plaintiffs' parcels (hereinafter the D'Addario and Duhaime parcels) except for small sections of the Connecticut Turnpike and a main line of the Metro North Railroad. Neither the state nor the railroad appealed from the zone change.

While the administrative appeals were being heard by the trial court, F. Francis D'Addario died. The five executors of his estate, David D'Addario, Lawrence D'Addario, F. Lee Griffith, Albert F. Paolini and Lawrence B. Schwartz, moved to be substituted as party plaintiffs and were allowed to do so.

The plaintiffs in this case, other than Ernest Duhaime and the five executors of the D'Addario estate, are Richard Duhaime and Lucian Truskowski, each of whom owns one third of the Duhaime parcel.

[2] The constitution of Connecticut, article first, § 11, provides: "The property of no person shall be taken for public use, without just compensation therefor."

The fifth amendment to the United States constitution provides, as pertinent: "nor shall private property be taken for public use, without just compensation."

consist of a portion of the Connecticut Turnpike (turnpike) and a portion of the main line of the Metro North Railroad (railroad). The plaintiffs' parcels are located between the turnpike and the railroad and are surrounded by commercial uses including a gravel pit, a highway service area and maintenance yard, a shopping center and a commuter parking lot. The Duhaime parcel is subject to an easement leading to the D'Addario parcel from Hollow Tree Ridge Road. This easement presently provides the only legal access to the D'Addario parcel.

The D'Addario land is bounded by another parcel of land, consisting of twenty-two acres. The twenty-two acre parcel was not subject to the 1985 zone change, and is not the subject of this appeal. It has always been zoned R-1/2 permitting single family residences on one-half acre lots, but has been used for gravel mining for over fifty years.

Prior to 1967, both of the plaintiffs' parcels were zoned R-1/2. In 1967, the commission, with the promotion of commercial development as its goal, rezoned both parcels as a Designed Office and Research zone (DOR-5) allowing executive and administrative corporate office uses as well as research and design laboratories.

In 1984, the commission extensively revised the town's plan of development in an effort to preserve the residential character of the town. The revised plan reflected a shift in policy toward limiting commercial development. The commission expressed concern about the growth of office space in Darien and in particular noted that the D'Addario and Duhaime parcels, as zoned, could generate significant amounts of traffic which could have an adverse impact on neighboring residential areas.

In 1985, the commission, on its own initiative, moved to adopt the zone change that is the subject of this appeal. The change was adopted and the D'Addario and Duhaime parcels were rezoned from DOR-5 to R-1/2. The commission claimed that the rezoning was necessary to make the parcels consistent with the recent changes in the town's plan of development. At a public hearing on the proposed rezoning, a zoning enforcement officer and an assistant planner made brief presentations in favor of rezoning the parcels while the plaintiffs, on the other hand, presented substantial evidence against the proposed zone change. An expert witness testified that if the D'Addario parcel were zoned residential, only three to four lots could be developed unless a variance could be obtained to allow thirteen building lots. The monetary difference between a development of thirteen residential lots and an office building was estimated to be more than $3 million. The same expert testified that if the Duhaime parcel were used for residential purposes, rather than commercial purposes, the difference in value would be more than $1 million. All of the plaintiffs' expert witnesses testified that it was not economically feasible to use the properties for residential development because of their location next to the turnpike and railroad.

The plaintiffs appealed to the trial court and presented evidence, some of which had been introduced at the public hearing. In addition, they introduced evidence on the issues of aggrievement and confiscation.[3]

[3] General Statutes § 8-8 (k) provides in relevant part: "The court shall review the proceedings of the board and shall allow any party to introduce evidence in addition to the contents of the record if . . . it appears to the court that additional testimony is necessary for the equitable disposition of the appeal."

A trial court may hear additional evidence on the constitutionality of a zoning regulation in order to dispose equitably of an administrative appeal when there was insufficient evidence introduced before the zoning commission from which the court could decide the issue. *Troiano* v. *Zoning Com-*

The trial court concluded that the rezoning from DOR-5 to R-1/2 amounted to a taking, and therefore rendered judgments invalidating the zone change and sustaining the plaintiffs' appeals.[4] We affirm those judgments.

We must first decide, as a threshold question, whether the plaintiffs may attack the constitutionality of the zone change, as it affects them, in an administrative appeal. The general rule as stated in *Florentine* v. *Darien,* 142 Conn. 415, 115 A.2d 328 (1955), and as reiterated in *Cioffoletti* v. *Planning & Zoning Commission,* 209 Conn. 544, 552 A.2d 796 (1989), is that a party "cannot seek the relief provided in an ordinance or statute and later in the same proceeding raise the question of its constitutionality." *Florentine* v. *Darien,* supra, 428. There are instances, however, when the rule does not apply. It is not applicable when the legislature has provided otherwise. *Cioffoletti* v. *Planning & Zoning Commission,* supra, 550. It also does not apply when the party challenging the constitutionality of the particular regulation or ordinance does not seek relief pursuant to either. *Chevron Oil Co.* v. *Zoning Board*

---

mission, 155 Conn. 265, 269, 231 A.2d 536 (1967); *Strom* v. *Planning & Zoning Commission,* 153 Conn. 339, 344, 216 A.2d 623 (1966); see *Cioffoletti* v. *Planning & Zoning Commission,* 209 Conn. 544, 550–52, 552 A.2d 796 (1989).

Here, additional evidence was necessary for the equitable disposition of the case because the plaintiffs had not raised the taking issue before the commission nor could they because it was not until after the commission had rezoned their properties that the plaintiffs could claim that a taking had occurred. See *Cioffoletti* v. *Planning & Zoning Commission,* supra, 552.

[4] The relief sought by the plaintiffs was an order directing the commission "to deny the proposal to change the zone [of the plaintiffs' land] from DOR-5 to R-1/2." They alleged an unconstitutional taking or a practical confiscation of their properties. The court found a taking, rather than a practical confiscation. The latter occurs when the regulation or ordinance so restricts the use of land that it cannot be used for *any* reasonable purpose, and the former when the regulation or ordinance restricts the use of the property so stringently that the owner suffers a great economic deprivation, and there is no significant public benefit. *Chevron Oil Co.* v. *Zoning Board of Appeals,* 170 Conn. 146, 365 A.2d 387 (1976).

of Appeals, 170 Conn. 146, 365 A.2d 387 (1976); Bartlett v. Zoning Commission, 161 Conn. 24, 282 A.2d 907 (1971); Troiano v. Zoning Commission, 155 Conn. 265, 231 A.2d 536 (1967); DeForest & Hotchkiss Co. v. Planning & Zoning Commission, 152 Conn. 262, 269–70 n.1, 205 A.2d 774 (1964). In the present case, as in Chevron Oil Co., Bartlett and Troiano, the plaintiffs seek no relief under the zoning regulation that is the subject of these appeals, and, therefore, may question whether the zone change, as applied to them, is a taking of their properties.

"All property is held subject to the right of government to regulate its use in the exercise of the police power, so that it shall not be injurious to the rights of the community, or so that it may promote its health, morals, safety and welfare. The power of regulation by government is not unlimited; it cannot . . . be imposed unless it bears a rational relation to the subjects which fall fairly within the police power and unless the means used are not within constitutional inhibitions. The means used will fall within these inhibitions whenever they are destructive, confiscatory, or so unreasonable as to be arbitrary." State v. Hillman, 110 Conn. 92, 105, 147 A. 294 (1929).

The question here is not whether the zone change is rationally related to the exercise of the police power but whether, as applied to the plaintiffs' properties, it is so unreasonable and confiscatory as to constitute for all practical purposes a taking of private property for public use. See Bombero v. Planning & Zoning Commission, 218 Conn. 737, 746, 591 A.2d 390 (1991); Dooley v. Town Plan & Zoning Commission, 151 Conn. 304, 309, 197 A.2d 770 (1964); Corthouts v. Newington, 140 Conn. 284, 288, 99 A.2d 112 (1953). In this case, the trial court invalidated the commission's rezoning not because it was not rationally related to the

proper subjects of police power regulation but because it was confiscatory as applied to the plaintiffs' parcels.

A zoning regulation is presumed to be constitutionally valid and should be sustained by a court unless a party, challenging its validity, demonstrates that it clearly violates constitutional principles. *Troiano* v. *Zoning Commission,* supra, 269. "The validity of the legislation must be tested by its effect upon the plaintiffs under the facts of this case and not under some other circumstances." Id. In other words, a determination as to whether a zoning regulation is unreasonable as applied to a particular piece of property so as to constitute a taking must be made in light of the facts and circumstances of each particular case. See *Chevron Oil Co.* v. *Zoning Board of Appeals,* supra, 151; *Horwitz* v. *Waterford,* 151 Conn. 320, 323, 197 A.2d 636 (1964).

A trial court employs a balancing test in determining whether a taking has occurred. *Chevron Oil Co.* v. *Zoning Board of Appeals,* supra; see also *Cioffoletti* v. *Planning & Zoning Commission,* supra, 562–63. That balancing test requires that the trial court consider (1) the degree of diminution in value of the particular piece of property, (2) the nature and degree of the public harm to be prevented and (3) the realistic alternative uses available to the landowner. Id.; see also *Horwitz* v. *Waterford,* supra, 324; *Del Buono* v. *Board of Zoning Appeals,* 143 Conn. 673, 677, 124 A.2d 915 (1956). In short, a court balances the financial effect of a zoning regulation on a particular owner or owners, which includes realistic alternative uses of the land, against the health, safety and welfare of the community. *Chevron Oil Co.* v. *Zoning Board of Appeals,* supra. Subsidiary factors involved are the location of the land, the size of the parcels affected by the administrative action, the physical characteristics of the land, the necessity of further

action by the town in order for the landowner to achieve maximum use of the land if the initial action is upheld, and the effect of the action on the surrounding landowners and the public in general.[5]

Our analysis under the test of *Chevron Oil Co.* begins with the financial impact on the plaintiffs. The trial court heard testimony from and received the appraisal of the plaintiffs' appraiser, Ronald Glendinning, who stated that the zone change from commercial to residential substantially reduced the value of the plaintiffs' properties. The trial court found Glendinning's appraisal to be credible and realistic.

Specifically, Glendinning's appraisal indicated that the D'Addario parcel could easily comply with DOR-5 zoning regulations. If developed commercially as a two story office building with 64,000 square feet, which was a permitted use before the zone change, the parcel would have a net value of over $3.5 million. This net value was obtained by deducting building costs, on-site improvements and modifications to a railroad bridge on Hollow Tree Ridge Road.

Glendinning estimated, on the other hand, that the D'Addario parcel would be worthless for development as a residential subdivision because the total cost of development would exceed the gross sale value if the owners were required to make road improvements at the bridge. The trial court reasoned that although the

---

[5] The present case does not involve a change in the physical characteristics of land or a substantial change in ecological conditions, such as would be true in a case involving statutory protection for the environment. In *Just* v. *Marinette County*, 56 Wis. 2d 7, 17, 201 N.W.2d 761 (1972), the court held: "An owner of land has no absolute and unlimited right to change the essential natural character of his land so as to use it for a purpose for which it was unsuited in its natural state and which injures the rights of others." Even if *Just* would be followed in Connecticut; see *Manor Development Corporation* v. *Conservation Commission*, 180 Conn. 692, 433 A.2d 999 (1980); its considerations would not affect our outcome.

commission could not legally require the owners to make off-site improvements to the town road system, the commission could deny a subdivision application if the commission found that the traffic that would be generated by the subdivision, coupled with an inadequate railroad bridge, would present a traffic safety problem.

The Glendinning appraisal assumed that a maximum of thirteen lots, each with a detached single family home on a one-half acre lot, was possible if a variance of a Darien subdivision regulation were obtained. Without this variance, only four lots could be developed, and the total cost of developing the four lots would exceed the gross sale value of the D'Addario parcel. In other words, even without having to repair the railroad bridge, Glendinning concluded that the D'Addario parcel is worthless for development as a residential subdivision if the plaintiffs could not obtain a variance.

Glendinning predicted a similar diminution in value with respect to the Duhaime parcel. Glendinning estimated that the Duhaime parcel, if developed as an office building of 24,300 square feet, would result in a net value of $1,531,000 after taking into consideration various development costs including the cost of repairing the railroad bridge. Glendinning testified that if the Duhaime parcel were developed for residential use, namely five one-half acre lots, all having frontage on Hollow Ridge Tree Road, with no financial contribution from the D'Addario parcel for road construction, then the net value of the property would be decreased to $160,500 after expenses. Even if the owners of the D'Addario parcel were to contribute to the construction of a road, the value of the Duhaime parcel would increase only to $201,000.

On the basis of Glendinning's figures, the trial court concluded that the zone change from commercial to

residential drastically reduced the value of the D'Addario property from $3,584,000 to a maximum of $308,300, a 91.4 percent reduction, and reduced the value of the Duhaime property from $1,531,000 to $160,500, an 89.5 percent reduction.

The trial court adequately considered the realistic alternatives available to the property owners under the R-1/2 zoning. The trial court reviewed the commission's zoning regulations and found that, under the regulations, the only other permitted uses are public schools and parks, private open space reservations, wildlife sanctuaries and undeveloped conservation areas. Such uses are usually of no value to developers who own relatively small areas of land. Other uses, allowed with special permits, such as private schools, nursery schools, churches, convents and monastaries, were not demonstrated to be economically feasible at this location. Because none of the alternative uses, including those allowed by special permit, was proven to be economically feasible, the trial court concluded that the only practicable use of the properties, under the R-1/2 zoning, was as single, detached one family residences each on its own lot.

Balanced against the finding that the plaintiffs' properties were substantially diminished in value and that there were no realistic alternative uses other than as residential lots, was the finding that there would be minimal harm, if any, to the public if the zone change were not effected. The latter finding was based on a number of factors.

The trial court found that using the parcels for commercial purposes would not cause traffic congestion based on testimony and a report of Benedict Barkan, a traffic engineer, a videotape of the vicinity showing traffic during the evening rush hour, and a viewing of the property by the court itself. From the record and

its visual inspection of the properties, the trial court stated that the only potential traffic problem was with the railroad bridge. The trial court, however, reasoned that this potential harm would exist whether the plaintiffs' properties were zoned residential or commercial. Furthermore, the traffic generated by the adjoining twenty-two acre parcel was not relevant because that parcel was not rezoned and presumably would continue to generate the same amount of traffic whether the plaintiffs' parcels were zoned residential or commercial.

In addition to finding that commercial zoning would not cause traffic congestion in the vicinity, the trial court also found that there was no real public benefit to be gained from the rezoning other than that the zone change would bring the subject properties into conformity with the 1984 town plan of development. This benefit, however, is slight because no evidence was introduced that indicated that nearby residential property values would be affected if the parcels were zoned commercial. The trial court, considering the surrounding uses, concluded that the parcels, if zoned residential, would not upgrade the neighborhood because they were isolated from other residential areas by the turnpike and railroad. Furthermore, there was no evidence before the trial court showing that development of the properties for office use would have any adverse impact upon wetlands, historic structures or the environment.

After the trial court carefully considered the facts of this case and weighed the relevant factors of the balancing test, it held that "the drastic percentage decrease in value from the zone change far outweighs any conceivable public benefit. There are no other feasible uses for either parcel under the residential zoning regulations . . . . Considering the unique location of the two parcels here, including the fact that they are an island surrounded by commercial uses . . . and the

special circumstances of this case,'' the rezoning from DOR-5 to R-1/2 constituted a taking under the balancing test. The trial court, therefore, declared the zone change unconstitutional as applied to the plaintiffs' properties.

A determination of whether a taking has occurred is fact bound, and, therefore, is particularly within the province of the trial court as a finder of fact, and particularly subject to a case-by-case analysis. *Chevron Oil Co.* v. *Zoning Board of Appeals,* supra, 151. The deference paid to the facts found by the trial court in such cases is apparent in the decided cases. The conclusion of the trial court that a taking had or had not occurred was upheld in cases such as *Cioffoletti* v. *Planning & Zoning Commission,* supra; *Chevron Oil Co.* v. *Zoning Board of Appeals,* supra; *Brecciaroli* v. *Commissioner of Environmental Protection,* 168 Conn. 349, 362 A.2d 948 (1975); *Corthouts* v. *Newington,* supra; and *Gil* v. *Inland Wetlands & Watercourses Agency,* 23 Conn. App. 379, 580 A.2d 539, cert. granted, 216 Conn. 829, 582 A.2d 205 (1990). The trial court could have reasonably and logically found that the plaintiffs had met their burden of proving that the zone change, as applied to them, was so unreasonable and confiscatory as to constitute, for all practical purposes, a taking. This finding is supported by ample evidence and thus cannot be disturbed. *Chevron Oil Co.* v. *Zoning Board of Appeals,* supra, 152.

The judgments are affirmed.

In this opinion the other judges concurred.