[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 10503
AGGRIEVEMENT
The plaintiffs are the owners of undivided fractional interests in 3.72 acres of land which is the subject of this appeal and therefore are aggrieved parties within the meaning of General Statutes 8-8. Additionally, the plaintiffs have sustained their ownership throughout the course of the appeal. Goldfeld v. Planning and Zoning Commission, 3 Conn. App. 172 (1985).
COLLATERAL ESTOPPEL
The plaintiffs urge the court to apply the principle of collateral estoppel with respect to the factual issues litigated and decided in this court's decision in D'Addario v. Planning and Zoning Commission, D.N. CV85 0077771 S (January 14, 1988, Fuller, J.), affirmed, 25 Conn. App. 137 (1991). Plaintiffs argue that the court is bound by the numerous factual findings made by Judge Fuller in his constitutional analysis and ultimate conclusion that any residential zoning classification for this property is invalid and unconstitutional.
The doctrine of collateral estoppel prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action, Virgo v. Lyons, 209 Conn. 497 (1988). This case fails the test. In response to the Appellate Court's decision in the D'Addario case, supra, the defendant amended the zoning regulations in order to replace the unconstitutionally determined R-1/2 classification with a multi-family classification called DMR. Except for the facts which this court finds subsequently, all facts necessary for a full understanding of the issues may be found in that opinion and the opinion of the trial court. It clearly appears that the central issues in both cases are not the same. There is a significant difference between a zonal classification which permits single family detached residences on half acre lots and another which permits multi-family housing in several separate buildings on a single lot. Nevertheless, this court adopts the factual findings made by the CT Page 10504 trial court and reiterated by the Appellate Court insofar as they relate to the physical features of the property and the surrounding uses and influences.
ZONING ANALYSIS
While the D'Addario appeal was pending the Darien Planning and Zoning Commission rezoned the plaintiffs' property to Designed Multi Family Residential ("DMR"). This zone classification permits the erection of 4 housing units per acre with a density bonus to 6 units if at least 20 percent of the units are devoted to affordable housing as defined in the regulations. The plaintiffs challenge the defendant's action on the grounds that there is no rational relation between the purposes of the zoning amendment and the purposes of zoning as set forth in General Statutes 8-2. It is a fundamental principle that a zoning commission, when amending a zoning regulation, acts in a legislative capacity and thus enjoys a much broader discretion than it would if it were acting administratively, First Hartford Realty Corporation v. Plan and Zoning Commission, 165 Conn. 533 (1973). Next, while the zoning commission is required to give reasons for its action when it enacts a zoning amendment (8-3), it is not fatal if it fails to do so. Nielson v. Zoning Commission, 149 Conn. 410-11 (1962). Such an omission merely requires the court to search the record to ascertain if there is a valid reason for the commission's action. Morningside Association v. Planning and Zoning Board, 162 Conn. 154,156 (1972). A valid reason simply means that the amendment must bear a rational relationship to the legitimate objectives of zoning as set forth in 8-2. Builders Service Corporation v. Planning and Zoning Commission, 208 Conn. 267, 283 (1988). Finally, the valid reason must be reasonably supported by the record. Primerica v. Planning and Zoning Commission, 211 Conn. 85,99 (1989).
The reasons assigned by the Commission for adopting the amendment apparently appear on the third page of the record as item II. While their status as reasons are rather obscure these clauses do reflect unmistakably the Commission's recognition of the unsettled and controversial background which the property has experienced. When considered in conjunction with the avowed purpose of the amendment to the plan of development of May 4, 1991, it becomes clear that the reason for the enactment was to address an important community need to provide affordable housing for its residents and municipal employees while at the same time endeavoring to reach a reasonable accommodation with the property CT Page 10505 owners.
The record indicates that the commission gave the following reasons:
(1) The purpose of the amendment as set forth in the regulation itself; (2) the plan of development as amended in May, 1991 recognized the need for housing for moderate income families and this amendment is in furtherance of that goal; (3) to endeavor to reach a compromise which will allowed the property owners to achieve a fair return on their investment.
All three reasons bear a rational relationship to the legitimate objectives of zoning as set forth in 8-2. First, 8-2
mandates that zoning regulations "encourage the development of housing opportunities for all citizens of the municipality". Second, the regulations must be designed to promote the general welfare. Third, in 1988, the Connecticut General Assembly spoke out forthrightly in favor of promoting zoning legislation which encourages the construction of affordable housing for sale or rental. Section 8-2g reflects a statewide legislative attitude that multi-family dwellings designed for affordable housing should be given special treatment by zoning commissions.
We now look to ascertain whether these reasons are supported by the record. While there is nothing specific in the record that we can point to, the obvious reason for this legislation is that the need for affordable housing in every municipality in the state is well known. Not only has the General Assembly expressed itself on the issue but the Darien Planning and Zoning Commission itself has done so. Shortly after adopting the amendment involved in this case, the commission adopted 513 called "Moderate Income Housing Incentive" in which it gave local legislative recognition of the need for town residents and school board employees by permitting density bonuses in return for dedication of housing units to affordable use. The record further indicates that the amendment corresponds with the regional plan for the area as developed by the South Western Regional Planning Association (SWRPA). Thus the court concludes that the amendment appealed from is rationally related to the purposes of zoning and as Judge Fuller found with respect to the R-1/2, the change to residential use is in accordance with the comprehensive plan.
UNCONSTITUTIONAL TAKING CT Page 10506
The plaintiff's principal attack on the amendment is that the Commission's action was confiscatory and resulted in an unconstitutional taking of the plaintiff's property. A trial was held as required by Cioffoletti v. Planning and Zoning Commission,209 Conn. 544 (1989). The plaintiff offered three witnesses who testified concerning the deleterious impact which the surrounding uses have on the property, but none of them offered any opinion of its value. David and Richard Duhaime stated that the site was unsuitable for residential use and David concluded that the site had no value for residential purposes because of these influences. This court adopts the factual findings made by Judge Fuller concerning these influences as they are essentially the same today. No useful purpose would be served by repeating the numerous negative conditions which impact the site. Incidently, the court viewed the premises with counsel on September 1, 1992 at about 4 p.m. and again by itself on October 27, 1992 at 9 a.m. so that there was opportunity to experience first hand the audio visual impact of the surrounding uses at peak commuter hours at both ends of the day.
In D'Addario v. Planning and Zoning Commission, supra, the Appellate Court affirmed Judge Fuller's ruling that the R-1/2 classification as applied to this site and an adjacent 9.8 acres constituted an unconstitutional taking by the defendant. This court is now bound to apply the principles enunciated in that case to the facts of this case. As a predicate to that exercise the court must find and does hereby find that the action of the defendant Planning and Zoning Commission in this case was a final authoritative decision just as it was in D'Addario, supra. Hoffman v. Inland Wetlands Commission, 28 Conn. App. 262, 268 (1992).
Reading D'Addario and Hoffman together the court's exercise must include a series of steps. First, the court must determine whether the land owner's expectation of development is factually reasonable. In this regard, the plaintiffs offered very little evidence in support of this proposition. During the entire period of their ownership, the plaintiffs' only actual as opposed to theoretical expectation was to erect a home center[1] on the site and yet Ray Nurme, the Darien Planning Director, testified that they have never applied for zoning relief which would permit such use. Moreover, the DOR-5 Zone which applied to the property prior to DMR did not permit such a use. Finally, without expressing his owner's opinion as to value, David Duhaime testified that he and the other owners would "consider" an offer of $2,750,000 for the property if made and if the closing could be held in thirty days. CT Page 10507 The record is devoid of evidence of any actual expectation whatever to build anything under the DOR-5 Zone. Nevertheless, the court deems the plaintiffs' expectation of $2,750,000 to be consistent with what the owners believe they can receive for the property if zoned DOR-5. Parenthetically, at oral argument plaintiffs' counsel admitted that even the DOR-5 classification would produce little if any return in today's market. So, the plaintiffs may be regarded as having two expectations.
The first expectation, that of a home center, is totally unrealistic and unreasonable under the circumstances and zoning history of the site. The plaintiffs acquired their interest in the property in 1967 when the property was zoned Designed-Enterprise-5 which likewise did not permit a home center. Unlike the plaintiff in Lucas v. South Carolina Coastal Council, 115 L.Ed.2d 455
(1991) there was no evidence that the plaintiffs bought the property with the intent to build a home center on it or for that matter any other specific building or structure. Nor was there any evidence of the extent of the plaintiffs' investment in the property. Two years later, the zone was changed to DOR-5 in which it remained until 1985 when the defendant attempted to change it to R-1/2. Neither of the zoning classifications permitted home centers, either as of right or by special permit. Not only could there not have been reliance on the zonal classification for this purpose, but as stated above, there was no evidence of any efforts, with or without the expenditure of money, to obtain zoning relief to permit a home center. Nor was there any evidence of the formulation of any plans, the conduct of any studies or the hiring of any design professionals by the plaintiffs. Such an unformulated desire does not rise to the level of a reasonable expectation. A property owner has no vested rights in a particular zoning classification. Manchester Environmental Coalition v. Stockton, 184 Conn. 51, 71 (1981).
The plaintiffs' other expectation, though vague and unsubstantiated, is to receive $2,750,000 for the sale of the property. The unreasonableness of this expectation becomes apparent when it is compared to the highest valuations placed on the property by the very appraiser whom the plaintiffs successfully employed in the D'Addario case. In that case, Mr. Ronald Glendinning appraised the DOR-5 zoned property as of July 1985 at $1,531,000. The plaintiffs argue that this is the benchmark price against which the property's value as presently zoned should be measured. They offer no authority for this position. At trial, Mr. Glendinning opined that at the peak of the market in January CT Page 10508 1988, the property was worth $1,990,000 in the DOR-5 zone. His testimony then revealed that because of drastic changes in the market which occurred between that date and May 1991 (the day of rezoning to DMR) the property declined in value to $630,000. No evidence was offered to contradict these figures. Thus, the plaintiffs' expectation to receive $2,750,000 when at its peak the property was worth no more than $1,990,000 is also unrealistic and unreasonable.
The next step is for the court to determine whether the DMR classification has resulted in practical confiscation. In applying this test, the court does not overlook the principle that the maximum possible enrichment of a developer is not a controlling consideration of zoning. State National Bank v. Planning and Zoning Commission, 156 Conn. 99, 102 (1968). Nor will the fact that there has been a significant decrease in value as a result of the rezoning suffice to support a claim of confiscation. DeForest and Hotchkiss v. Planning and Zoning Commission, 152 Conn. 262, 271
(1964). On the other hand, a zoning ordinance which permanently restricts the use of property to such an extent that it cannot be used for any reasonable purpose results in an unconstitutional taking of property. Dooley v. Town Plan and Zone Commission,154 Conn. 470 (1967). In Dooley and some of the other leading Connecticut cases involving confiscatory zoning, the regulations prevented all feasible use of the property in question. See, Bartlett v. Zoning Commission, 161 Conn. 24 (1971); Horwitz v. Town of Waterford, 151 Conn. 320 (1964). In this case the plaintiffs can develop their property for anywhere from 15 to 22 multi-family dwelling units.
Having found no practical confiscation, we now proceed to apply the balancing test. "The balancing test requires that the trial court consider (1) the degree of diminution in value of the particular piece of property, (2) the nature and degree of the public harm to be prevented and (3) the realistic alternative uses available to the land owner." In short, a court balances the financial effect of a zoning regulation on a particular owner or owners, which includes realistic alternative uses of the land against the health, safety and welfare of the community, D'Addario v. Planning and Zoning Commission, supra at 143 (citations omitted).
First, the degree of diminution of value. The only evidence of value was supplied by Ronald Glendinning whose testimony is found to be credible and entitled to great weigh. Assuming the CT Page 10509 same type of development of the property under DOR-5 that he proposed in 1985 (a 24,300 square foot office building), Mr. Glendinning found that there was no market for such a structure as of May, 1991. His analysis of the "appraisal problem" as he calls it tells a sad story of a drastic stoppage in sales in lower Fairfield county of land zoned for office use between January 1, 1988 and May, 1991. There being no market for DOR-5, he projected that the market will likely revive by 1996 and that the property's value would return to its peak of $1,990,000. This figure was based on a market approach to value which included several comparable sales taken from the mid 1980's which were then adjusted for several factors such as time, location and physical characteristics. He then determined what it would cost an investor to hold the property until 1996 by developing a discounted cash flow study. In addition to conventional factors such as brokerage, insurance and profit, he adjusted by making a discount for each year the investor would be required to hold the property until the market rebounds. By this analysis he concludes that the value of the property as zoned DOR-5 as of May 5, 1991 was $630,000.[2]
Once again, poor recent market history hampered his efforts to apply the market approach to the DMR Zone. His assumption at this point was that since the site has a potential (with special permit) of from 14 to 22 apartment units, 18 units is the average. On the basis of both the record in the zoning appeal and the evidence at trial, this court finds that obtaining approval for 18 units from the defendant Commission is a reasonable probability. Similarly, the appraiser was forced to resort to comparables taken from the mid-1980's to flesh out his market approach. As with the DOR-5 Zone, he adjusted these comparables for time, location, lot configuration, physical influences and the fact that no special permit has been granted for the site in question. This exercise yielded a per unit value for the land of $26,000 resulting in a site value of $470,000. Comparison of the value as between DOR-5 and DMR indicates a difference of $160,000 which represents a reduction in value of 25.4%. It is inappropriate to use any date for value comparison other than the date on which the commission rezoned to DMR.
To be sure, a 25% reduction in value is a significant loss. But whether the loss in value is significant is not the test. DeForest and Hotchkiss Co. v. Planning and Zoning Commission, supra. The balancing test lends itself to neither a definite formula nor an upset percentage. We are however able to discern from our case law that there must be a drastic percentage decrease CT Page 10510 in value; D'Addario, supra at 147, or great economic deprivation, Hoffman, supra at 268. In Chevron Oil Co. v. Zoning Board of Appeal, 170 Conn. 146 (1976) the court held an 85% reduction in value to be confiscatory and in D'Addario, supra, the court reached the same result with respect to an 89.5% reduction. Without deciding at which percentage the line between confiscation and non-confiscation ought to be drawn, this court does not believe that a 25% reduction in value constitutes confiscation.
As the court understands the balancing test, having made this determination, there is no need to proceed to assess the countervailing public benefit. On the other hand, should there be a need to do so, the court is amply persuaded from the testimony of Mr. Glendinning and Mr. Nurme as well as from its own knowledge as a lifelong resident of lower Fairfield County, that there has long been a serious shortage of rental and ownership housing for families of moderate income, especially for municipal and school board employees. The plaintiffs have failed to sustain their burden of proof on this issue and so the administrative appeal is dismissed.
MOTTOLESE, J.