[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, GD Development, Inc. ("GD"), and Farview Management Company[1], appeal a decision of the defendant commissioner of the department of health services[2], docket number 900727SD, sustaining the order of the defendant director of health of the City of Danbury denying GD a permit for a septic system on a residential lot. The commissioner acted pursuant to General Statutes § 19a-229. The plaintiffs' appeal is authorized by § 4-183. The court finds the issues in favor or the defendant commissioner.
The facts essential to the court's decision are undisputed and fully reflected in the record. The plaintiffs purchased a nineteen lot subdivision located in the City of Danbury in 1973. The plaintiffs have developed and sold eighteen of the nineteen lots as single family residences. The remaining parcel, lot number ten, is the subject of the dispute presently before the court.
On July 27, 1990, the director of health of the City of Danbury denied the plaintiffs' application for a permit to install a septic system on lot number ten. The facts essential to the court's decision are undisputed and fully reflected in the record. The plaintiffs purchased a nineteen lot subdivision located in the City of Danbury in 1973. The plaintiffs have developed and sold eighteen of the nineteen lots as single family residences. The remaining parcel, lot number ten, is the subject CT Page 7025 of the dispute presently before the court.
On July 27, 1990, the director of health of the City of Danbury denied the plaintiffs' application for a permit to install a septic system on lot number ten. The stated reason for this denial was that the naturally occurring soil on the lot was under water, requiring the proposed septic system to be constructed entirely in fill. The director concluded that such a septic system would not be in conformance with Regs., Connecticut State Agencies § 19-13-B103e. The plaintiffs then appealed this decision to the commissioner pursuant to General Statutes § 19a-229.
On November 20 and 30, 1990, the department of health and addiction services conducted hearings on the plaintiffs' appeal before a hearing officer designated by the commissioner to render a proposed memorandum of decision. On February 26, 1991, the hearing officer rendered his proposed decision, to which the plaintiffs took exception. On February 7, 1992, the commissioner rendered a final decision affirming the City of Danbury's denial of the septic system permit. On March 27, 1992, the plaintiffs filed this administrative appeal of the commissioner's final decision.
On March 23, 1993, this court remanded the case back to the commissioner pursuant to General Statutes § 4-183(h) to consider additional evidence, render new findings, and render a new decision on whether the denial of the septic system permit constitutes a taking of property for which the plaintiffs must be compensated. On March 10, 1994, the commissioner rendered a final decision affirming the City of Danbury's denial of the septic system permit. On March 27, 1992, the plaintiffs filed this administrative appeal of the commissioner's final decision.
On March 23, 1993, this court remanded the case back to the commissioner pursuant to General Statutes § 4-183(h) to consider additional evidence, render new findings, and render a new decision on whether the denial of the septic system permit constitutes a taking of property for which the plaintiffs must be compensated. On March 10, 1994, the commissioner rendered a new final decision (1) sustaining the City of Danbury's denial of the septic permit, and (2) finding that such a denial did not constitute a taking for which the plaintiffs should be compensated. CT Page 7026
In her decision, the commissioner made the following relevant findings. The commissioner determined that lot number ten was an area of special concern pursuant to Regs., Connecticut State Agencies § 19-13-B103(d)e.[3] The commissioner found that the director of the department of health of the City of Danbury had denied the plaintiffs' application for a permit pursuant to Regs., Connecticut State Agencies § 19-13-B103e, which provides:
 (a) No permit or approval shall be issued: . . . (4) For any new subsurface sewage disposal system where the surrounding naturally occurring soil cannot adequately absorb or disperse the expected volume of sewage effluent without overflow, breakout or detrimental effect on ground or surface water.
The director based his conclusion that the lot was unsuitable for a septic system on a study completed by Frank Schwab, the supervising sanitary engineer for the department of health services. That study concluded that the site was inappropriate for a septic system even after the plaintiffs had transported soil to the site from another location and deposited it as fill over the original soil. Schwab's report concluded:
 Our review of this plan and previous plans identifies an underlying naturally occurring soil to be an impervious hard-packed mottled grey-blue sandy clay as noted on plans. . . . Because the underlying naturally occurring soil is totally saturated and does not have the ability to absorb or disburse additional sewage flows, sewage applied to any fill placed above this soil relies totally upon the fill material for filtration and detention . . . A factor which further enhances our concern is that this lot lies within the public water supply watershed serving the municipal water system.
Schwab recommended, therefore, that the plaintiffs' application for a septic system permit be denied.
Based on these findings of the supervising sanitary engineer, CT Page 7027 the commissioner concluded that:
 Despite the fact that fill was transported and added to the site, the naturally occurring soil, originally on the site, was determined to be inadequate by the local health department because the naturally occurring soil beneath the fill could not absorb and disperse the projected sewage as required by section 19-13-B103e(1)(3) and (4). As such, the permit for the subsurface sewage disposal system was properly denied.
The commissioner also found that the denial of the septic permit was not a taking of property for which the plaintiffs should be compensated. The commissioner so concluded because (1) the plaintiffs were aware at the time of purchase that six of the nineteen lots, including the lot in question, were not approved for development and (2) the denial of the septic system permit did not deprive the plaintiffs of all economic uses of the property.
On appeal to this court, the plaintiffs advance three arguments in support of their position: (1) that the commissioner's factual findings concerning the operation of the proposed septic system are not supported by the evidence; (2) that the commissioner's decision misinterprets the applicable regulations; and (3) if the commissioner's decision denying the permit is upheld, it constitutes a taking of the property for which the plaintiffs must be compensated.
With respect to the plaintiffs' argument that the evidence does not support the commissioner's decision, they maintain that the evidence admitted at the agency hearings instead proved that the proposed septic system would function properly and would cause no harm to the environment. They assert that the commissioner failed to consider the technical merits of the proposed septic system. The plaintiffs contend that the testimony of their expert, Ralph Gallagher, a civil engineer, was uncontradicted. The plaintiffs also contend that other lots in their subdivision have septic systems constructed on fill.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183(j) provides that "(t)he court shall CT Page 7028 not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact."
This principle of limited intervention in the factfinding process is expressed in the rule regarding substantial evidence. "If the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding . . . the decision must be upheld." Conn. BuildingWrecking Co. v. Carrothers, 218 Conn. 580, 601 (1991). "The `substantial evidence' rule governs judicial review of administrative factfinding under General Statutes § 4-183. . . An administrative finding is supported by `substantial evidence' if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred . . . Such a standard of review allows less room for judicial scrutiny than does the `weight of the evidence' rule or the `clearly erroneous' rule . . . In determining whether an administrative finding is supported by `substantial evidence, a court must defer to the agency s right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part (Citations and internal quotation marks omitted). Briggs v. State EmployeesRetirement Commission, 210 Conn. 214, 217 (1989).
In the present case, the court has examined the record of the administrative proceedings. It is true, as the plaintiffs argue, that they presented expert testimony to persuade the city and the hearing officer for the department that the proposed septic system would be adequate and would comply with applicable health codes. In opposition, there was evidence presented by the city, including the report of its sanitary engineer. That expert stated that the soil underneath the fill that the plaintiffs had added was incapable of adequately absorbing and purifying the volume of sewage that could be expected to be produced by the intended use of the property. It was his opinion, therefore, that the septic system would not comply with the code provisions. The court concludes that there was ample and substantial evidence to support the commissioner's factual findings and it may not, therefore, be disturbed.
The crucial issue raised by the plaintiffs' appeal is the correct interpretation of Regs., Conn. State Agencies § 19-13-B103e. The commissioner's interpretation of that regulation is the basis of her disapproval of the plaintiffs' application for a septic system permit. As indicated above, the city's sanitary engineer found the septic system plan to be CT Page 7029 defective because it relied on fill imported from outside the property to absorb the expected sewage. The regulation provides that a permit should not issue if "the surrounding naturally occurring soil cannot adequately absorb or disperse the expected volume of sewage effluent." The commissioner, as well as the city's sanitary engineer, interprets the term "naturally occurring soil" to mean only the soil that is originally on-site and not including fill that is imported, even if that fill is itself soil from some other site. In her decision, the commissioner asserts that the department has "historically" always interpreted the term that way. The commissioner states that the department has "historically" always interpreted the term that way. The commissioner states, "To rule otherwise would allow any developer to alter the original condition of a lot and argue that a permit should issue when its underlying attributes make it environmentally unsafe."
The plaintiffs argue that the commissioner's interpretation of § 19-13-B103e(a) of the regulations is unreasonable and inconsistent with § 19-13-B103b, which defines "suitable soil" in terms of performance criteria alone.[4] The plaintiffs contend that the commissioner's analysis would forever bar the plaintiffs from developing their property regardless of the adequacy of any proposed septic system.
The plaintiffs also contend that the regulations governing septic systems explicitly contemplate that some septic systems will depend on the addition of fill to the site. See Regs., Connecticut State Agencies § 19-13-B103e(d)(6).[5] The plaintiffs argue that this necessarily undermines the commissioner's reasoning because the "naturally occurring soil" at those sites must also be unable to adequately absorb or disperse the expected volume of sewage effluent without the addition of fill. The plaintiffs therefore argue that the commissioner's interpretation of "naturally occurring soil" as meaning only soil originally on the site is illogical.
"Although the construction and interpretation of a statute is a question of law for the courts to decide . . . it is a well established practice of (the) court to accord great deference to the construction given (a) statute by the agency charged with its enforcement." Starr v. Commissioner of Environmental Protection,226 Conn. 358, 372 (1993). "This principle applies with even greater force to an agency's interpretation of its own duly adopted regulations." Griffin Hospital v. Commission on HospitalsCT Page 7030and Health Care, 200 Conn. 489, 497 (1986). It is undisputed that the commissioner is responsible for enforcing the regulation in question. This court is required, therefore, to accord great deference to the interpretation of that regulation given by the commissioner. This does not mean that the court must abdicate its adjudicative function in interpreting the law, but it does mean that where there are different but equally plausible interpretations of a statute or regulation, the court must give due deference to that followed by the administrative agency concerned. Starr v. Commissioner, supra 376.
In the present case, the court cannot say that the interpretation given by the commissioner is so implausible or unreasonable as to require its rejection. The commissioner's interpretation has essentially a "safety first" rationale. Thus, the city sanitary engineer testified that if the fill alone were relied on to carry the sewage load, "we can't reasonably assume that public health and nuisance conditions won't be created." On this point, the plaintiffs argue strenuously and compellingly that their technology would produce a septic system, based entirely on the added fill, that would render the sewage harmless. Therefore, they argue, there is no reason to give so narrow and restrictive a meaning to the term in question.
It is clear that the dispute between the parties is rooted in conflicting opinions concerning potential danger to the public health and the different technological measures that are necessary or adequate to protect it. It is equally clear, however, that it is not the court's proper function to substitute its judgment for that of an administrative agency on such factual issues or, in this case, on the interpretation of the agency's regulation that follows from such a factual determination. To do so would be to place the court in this case in the position of a super health services department, a role denied it under the law. The court concludes that the term "naturally occurring soil," as used in the department's regulation, has the meaning given to it by the department; that is, soil that is original to the site and not imported as fill from some other site.
Finally, the plaintiffs argue that the commissioner's denial of the permit is a taking of the plaintiffs' land for which the plaintiffs should be compensated. In this regard, they contend that the commissioner's decision was a final authoritative decision because she based her decision on an interpretation of the regulations that would forever bar the plaintiffs from CT Page 7031 constructing a septic system. The plaintiffs maintain that the naturally occurring on-site soil would by definition never be suitable for a septic system.
The plaintiffs first argue that they had a reasonable expectation of development when they purchased the land. The plaintiffs contend that they purchased the land for the explicit purpose of The plaintiffs first argue that they had a reasonable expectation of development when they purchased the land. The plaintiffs contend that they purchased the land for the explicit purpose of developing it into single residence housing and the lots were created for that purpose. The lots all received the appropriate zoning, subdivision, wetlands, filling and grading permits. The plaintiffs assert that the regulations upon which the permit denial was based became effective in 1982, at least nine years after the creation of the lot. The plaintiffs therefore conclude that they had a reasonable expectation of development.
The plaintiffs contend that the commissioner's decision has deprived them any economically beneficial or productive use of the land because the lot is zoned residential and is unsuited for any other use. The plaintiffs maintain that the lot is too small for any of the special exceptions to its zoned use. The plaintiffs assert that the only possible remaining use of the land is as an open space, and, because it must remain open space, there would be no incentive for the owner of a neighboring lot to purchase it. The plaintiffs' own expert testified that there would be no market for such a lot because the buyer would be forced to hold it in an undeveloped state in perpetuity. The plaintiffs assert that the market value of the lot has been reduced from $160,000 to $3,200. The plaintiffs also assert that the commissioner's claim that the lot could be used to expand an abutting lot is similarly without merit because the plaintiffs no longer own those lots.
The defendants advance a number of preliminary objections to the court's consideration of the plaintiffs' takings claim. They argue first that the plaintiffs waived their right to press the claim in this court because they did not adequately raise it in the original administrative proceeding. Second, they argue that the claim is improperly joined to an administrative appeal or, in the alternative, that there is no statutory authority for such a claim to be presented in an appeal from an administrative decision of the commissioner of health and addiction services. CT Page 7032 These arguments raise important legal issues, but in this case it is not necessary for the court to address them. The facts of the case, as developed at the administrative hearing on remand, indicate that the is the plaintiffs' claim may not be sustained.
In determining whether a taking has occurred:
 the reviewing court must first establish that there was a final authoritative decision by a commission and then conduct a two-pronged analysis. That analysis must result in two conclusions. First, the landowner's expectation of development must be found to be factually reasonable and second, the denial of the application must constitute a taking either as a practical confiscation of property or by application of a balancing test. Id. It is the plaintiffs' burden to prove that there was a final authoritative decision, that the expectation for development was reasonable and that the property cannot be used for any reasonable purpose or that the denial of a permit caused the owner great economic deprivation without a significant public benefit. D'Addario v. Planning Zoning Commission, 25 Conn. App. 137, 147-48, 593 A.2d 511 (1991).
Hoffman v. Inland Wetlands Commission, 28 Conn. App. 262, 268
(1992).
In this case, the commissioner found as a fact that the plaintiffs could not have had a reasonable expectation at the time they bought the property that they could develop it for residential purposes. The commissioner based this factual finding on evidence in the record on remand that the plaintiffs knew that the lot in question had not been approved for development by the city planning commission. The court concludes that the commissioner had substantial evidence to support her factual finding and, accordingly, it may not be disturbed. Since the plaintiffs did not have the requisite reasonable expectation of developing the land when they bought it, they cannot now hold the defendants liable for the determination that it is undevelopable.
The plaintiffs' appeal is dismissed. CT Page 7033
MALONEY, J.