[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
The plaintiffs bring these appeals from separate decisions of the defendant, Planning Zoning Commission of the Town of Ridgefield, concerning property located at Lot #2 Bennett's Farm Road (Exhibit 1).
The plaintiffs, Frank and Frances Galasso, are the owners of the parcel, having purchased the land in 1968, two years after it was created by approval of a
The plaintiff, Stephen J. Courtney, is a contract purchaser, who seeks permission to construct a dwelling on the undeveloped parcel. CT Page 14731
On February 6, 2000, the contract purchaser applied to the wetlands agency for a permit to construct a single family dwelling on a slab. (ROR A.)
That same day, he applied for a special permit to construct a sewage force main and a haul road on the property.
Since the property is located in a Flood Safety Zone, a special permit is required prior to any construction.[1]
Both applications were the subject of a public hearing on March 28, 2000.
Because the defendant, Planning Zoning Commission of the Town of Ridgefield, is the designated wetlands agency of the Town of Ridgefield, a combined public hearing was conducted.
At the hearing, the defendant sat in two capacities: (1) as the designated wetlands agency for the municipality, and (2) as the agency authorized to issue special permits.
The property consists of 1.07 acres, and is located in a RAA residential zone.
The lot was created by a subdivision approved in 1996, prior to the adoption of the Inland Wetlands Regulations in 1974.
Although the public hearing record seems to indicate that multiple applications have been filed concerning the parcel, the parties stipulated at trial that the instant proposal is the only development proposal ever submitted.
It was further stipulated that reference in the record to a foundation on the property was inaccurate, and the reference was to another parcel.
The property, which is located in a Flood Safety Zone, consists of 1.07 acres, of which only 0.4 (one-third) is not designated as a wetland.
A watercourse flows through the property, in a west to east direction.
Fill was deposited in the front of the parcel, necessitating the crossing of the wetlands for purposes of installing a septic system.
The proposed dwelling would be located on a slab, due to the difficulty of excavating a proper foundation.
The area is very unstable, and the use of machinery on the property is CT Page 14732 problematic.
An excavator, brought onto the property to dig test holes, became mired in the mud.
At its May 2, 2000 meeting, the defendant, sitting as the wetlands agency, denied the request for a permit, citing the following reasons:
 1. The activity represents a significant intrusion into the wetlands and watercourse, having the potential to cause permanent damage to the wetland and watercourse, which are irreplaceable and fragile natural resources; these resources may be destroyed by the extensive and intensive construction involving the deposition, filling and removal of material.
 2. There is potential for serious injury to the wetlands and watercourses, as well as to uplands (including abutting and downstream properties), and considering the nature of the proposed construction, there is no long-term assurance that the safety of the wetlands and watercourses would be protected for the future.
In voting to deny the special permit application, the Planning Zoning Commission stated:
 1. The Commission considered the report of the Inland Wetland Board . . . based on the potential for serious injury to the wetlands and watercourse. . . .
 2. The deposition, filling and removal of material, and the diversion, diminution and obstruction of water flow . . . from the proposed activity may have a detrimental effect on upstream and downstream properties. . . .
The plaintiffs have appealed both from the denial of the permit by the municipal wetlands agency, and from the denial of the special permit.
In the appeal from the wetlands agency, they claim that the decision is not supported by substantial evidence in the record, and the denial of the permit has produced a taking of property without just compensation.
The appeal from the denial of the special permit asserts that the commission's decision and the reasons given are not supported by the CT Page 14733 record.
 AGGRIEVEMENT
The plaintiffs, Frank and Frances Galasso, are the owners of the property which is the subject of this appeal, and have continuously owned the parcel since 1968. (Exhibit 1.)
The question of aggrievement is one of fact. Hughes v. Town Planning Zoning Commission, 156 Conn. 505, 508 (1968). Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an appeal. Winchester Woods Associates v. Planning Zoning Commission, 219 Conn. 303, 307 (1991).
A party claiming to be aggrieved must produce evidence at trial which satisfies a twofold test: (1) the party must demonstrate a specific personal and legal interest in the decision appealed from, as distinct from a general interest such as concern of all members of the community as a whole; and (2) the party must show that the personal and legal interest has been specifically and injuriously affected by the action of the agency. Primerica v. Planning Zoning Commission, 211 Conn. 85, 93
(1989); Hall v. Planning Commission, 181 Conn. 442, 444 (1980).
Ownership of the property, which is the subject of an application, demonstrates a specific personal and legal interest in the subject of the decision. Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525,530 (1987).
As the owners of Lot #2, Bennett's Farm Road, Frank and Frances Galasso are aggrieved by the decision of the Planning Zoning Commission, denying them permission to conduct a regulated activity, and denying the special permit to construct a sewage force main and haul road on the property.
They also have standing to assert the claim that the denials have resulted in a taking of their property without just compensation.
The plaintiff, Stephen J. Courtney, as a contract purchaser, is aggrieved for purposes of challenging the refusal of the wetlands agency to issue a permit, and the denial of the special permit. Shapero v.Zoning Board, 192 Conn. 367, 376 (1984); R R Pool Home, Inc. v.Zoning Board of Appeals, 43 Conn. App. 563, 569-70 (1996).
However, because he has no ownership interest in the property, he lacks standing to raise the taking claim. CT Page 14734
 STANDARD OF REVIEW — WETLANDS PERMIT
When acting as the Inland Wetlands Agency of the Town of Ridgefield, the defendant, Planning Zoning Commission, pursuant to § 22a-36
through § 22a-45 of the General Statutes has been given broad discretion to oversee municipal wetlands activity. Kaeser v. ConservationCommission, 20 Conn. App. 309, 317 (1989).
An agency decision must be sustained if it is supported by substantial evidence. Bradley v. Inland Wetlands Agency, 28 Conn. App. 48, 52 (1992).
Under the substantial evidence rule, the evidence offered in support of an agency's decision must be sufficient to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact. Samperi v. Inland Wetlands Agency, 226 Conn. 579,588 (1993).
The burden is on the party challenging the action of the wetlands agency to establish that the record does not support the decision reached. Red Hill Coalition, Inc. v. Conservation Commission, 212 Conn. 710,718 (1989).
Where an agency has stated reasons for its action, a court is limited to examining the assigned grounds. DeMaria v. Planning ZoningCommission, 159 Conn. 534, 540 (1970). If any reason offered in support of the decision supports the action, the decision of the agency must be sustained. Crescent Development Corporation v. Planning Commission,148 Conn. 145, 150 (1961).
 STANDARD OF REVIEW — SPECIAL PERMIT
The terms "special exception" and "special permit" are interchangeable.Beckish v. Planning Zoning Commission, 162 Conn. 11, 15 (1971).
When acting upon an application for a special exception or special permit, the planning and zoning commission acts in an administrative, rather than a legislative or quasi-judicial capacity. A.P. W. HoldingCorporation v. Planning Zoning Board, 167 Conn. 182, 184-85 (1974);Farina v. Zoning Board of Appeals, 157 Conn. 420, 422 (1969).
A special permit allows a property owner to use his property in a manner expressly permitted by the regulations. A permit is required because the nature of the proposed use is such that its exact location and mode of operation must be regulated because of particular, unique factors. Whisper Wind Development Corporation v. Planning ZoningCommission, 32 Conn. App. 515, 519 (1993). CT Page 14735
Although a commission has no discretion but to approve an application for a special permit if the regulations and statutes are satisfied;Westport v. Norwalk, 167 Conn. 151, 155 (1974); the special permit process is not purely ministerial.
Special permits are authorized, pursuant to § 8-2 of the General Statutes.[2]
The commission may determine whether general standards concerning health, safety and welfare contained in the regulations have been satisfied. Irwin v. Planning Zoning Commission, 244 Conn. 619, 627
(1998).
On factual questions, a reviewing court cannot substitute its judgment for that of the duly constituted municipal land use agency. Timber TrailsCorporation v. Planning Zoning Commission, 222 Conn. 380, 401 (1992).
In applying the law to the facts of a particular case, the municipal agency is cloaked with liberal discretion, and its action is subject to review by a court only to determine whether it acted arbitrarily, unreasonably, or illegally. Connecticut Sand Stone Corporation v.Zoning Board of Appeals, 150 Conn. 439, 442 (1963).
So long as it appears that an honest judgment has been reasonably and fairly exercised by the commission, after full hearing, courts should be cautious about disturbing a commission's decision. Cameo Park Homes,Inc. v. Planning Zoning Commission, 150 Conn. 672, 677 (1963).
 DENIAL OF WETLANDS PERMIT FINDS SUPPORT IN THE RECORD
The plaintiffs claim that the wetlands agency's decision is not supported by substantial evidence in the record.
This claim is without merit.
The plaintiffs' own expert, Dr. Gene McNamara, stated that any crossing of the wetlands should be taken "very seriously," and that the soils on the site indicated a "potentially unstable condition." (ROR A, pp. 24-26.)
As part of the proposal, a haul road was contemplated through the wetlands, in order to allow for a septic system servicing the dwelling.
Observations of members of the commission were stated on the record, CT Page 14736 based upon a walk of the property.
The sinking of the excavator when test holes were being dug, stands as graphic testimony concerning the difficulties of developing the site.
It is clear from a review of the record, that permanent damage to the wetlands was not only probably, but almost inevitable, given the conditions found at the site, and detailed in the record.
The record provides overwhelming support for the decision of the defendant, Planning Zoning Commission, and both reasons stated are supported by substantial evidence.
 PLAINTIFFS HAVE NOT DEMONSTRATED FINALITY FOR PURPOSES OF THEIR TAKING CLAIM
The plaintiff, Frances Galasso, testified at the court hearing that she and her husband purchased the 1.07 acre parcel with the intention of constructing a single family home.
The property was purchased in August, 1968 (Exhibit 1).
A landowner who purchased property with a reasonable expectation of residential development, has suffered a taking if regulatory constraints allow him to use his land only in its natural state, without any economically viable alternative use. Gil v. Inland Wetlands Watercourses Commission, 219 Conn. 404, 414 (1991).
When a plaintiff raises the issue of a taking of property without just compensation, the responsibilities of the trial court are mandated by § 22a-43a(a) of the General Statutes.[3]
The trial court decides the issue of a taking de novo, and a party seeking to demonstrate that a taking has occurred as a result of the action taken by an agency, may introduce evidence as to the economic effect of the decision, to enable the trial court to make a determination pursuant to § 22a-43a, that a taking has occurred. Cioffoletti v.Planning Zoning Commission, 209 Conn. 544, 549 (1989).
In this case, the plaintiffs presented no testimony, other than that of Frances Galasso, and elected to rely upon the record compiled at the public hearing.
No evidence was presented as to the value of the property as a building lot, nor was there any evidence of the cost of developing the property, or of other economic injury to the plaintiffs, Frank and Frances CT Page 14737 Galasso.
However, even before a court is permitted to review the merits of a taking claim, the plaintiffs must establish the finality of the agency decision as a prerequisite to judicial review of a taking claim. Gil v.Inland Wetlands Watercourses Commission, supra, 415.
If a property owner has not obtained a final decision from the administrative agency, the court lacks jurisdiction to rule on a taking claim. Port Clinton Associates v. Board of Selectmen, 217 Conn. 588, 604
(1991).
To establish finality, the property owner must prove that the relevant governmental entity will not allow any reasonable alternative use. Huckv. Inland Wetlands Watercourses Agency, supra, 533.
In most instances, a property owner must do more than submit one plan to an agency, in order to establish finality. Port Clinton Associates v.Board of Selectmen, supra, 607.
Although the record demonstrates that the parcel in question is ecologically fragile, and poses significant challenges to construction activities, the plaintiffs have not met the burden of proving finality.
References to multiple applications were made at the hearing, but the testimony at trial revealed that the instant application represents the only request for development made concerning this particular parcel.
Although the record unambiguously establishes that significant wetlands are a deterrent to development, it fails to demonstrate that the agency will not allow the plaintiffs to make any reasonable use of the property.
The plaintiffs are not required to tender repeated and futile applications for a wetlands permit.
However, the existing record is insufficient to establish that no development or viable economic use can be made of the property, including the .4 acre which is not designated wetlands.
Furthermore, in determining whether a taking of property without compensation has occurred, a trial court must employ a threefold analysis: (1) the degree of diminution in value of the particular piece of property; (2) the nature and degree of the public harm to be prevented; and (3) the realistic alternative uses available to the owner.Horwitz v. Waterford, 151 Conn. 320, 323 (1964); D'Addario v. PlanningCT Page 14738 Zoning Commission, 25 Conn. App. 137, 143 (1991).
A more substantial record is needed before that balancing test can be employed.
The plaintiffs should also present additional evidence concerning the expectation of development in 1968, in light of the fact that no application to develop the property was made for over thirty years.
 DENIAL OF SPECIAL PERMIT SUPPORTED BY THE COMMISSION
The Ridgefield Zoning Regulations make provision for a Flood Safety Zone (§ 307.0 et seq.).
The Flood Safety Zone is an overlay zone, and the requirements are "in addition to those applicable in the underlying zone."
The regulations provide that a special permit must be issued before any construction takes place within the overlay zone.
The regulations provide that the commission shall be guided by six provisions, when considering the issuance of a special permit (§ 307.0 (I)):
 1. Any general or specific regulations or recommendations of the State of Connecticut Department of Environmental Protection, Soil Conservation Service, U.S. Department of Agriculture, or other official body or individual having jurisdiction.
 2. The recommendations of the Town Engineer and the report of a qualified hydrologist, when required or voluntarily submitted.
 3. The effect of the proposal and similar proposals on upstream and downstream properties and the safety and value thereof
 4. The effect of the proposal on public or private culverts, bridges or other structures intended to pass floodwaters on the subject watercourse.
 5. The availability of public facilities, services, utilities and other improvements.
CT Page 14739
 6. Such other considerations that, in the opinion of the Commission, are deemed essential to the maintenance of the stated intent of this section.
In addition, § 8-3c(b) of the General Statutes provides, when deciding upon a special permit: "In making its decision the zoning commission shall give due consideration to the report of the inland wetlands agency."
In an overlay Flood Safety Zone, the action of the inland wetlands agency, applicable to the underlying zone, should be accorded great weight and consideration.
Even if the defendant, Planning and Zoning Commission, was not the inland wetlands agency of the municipality, it would be remiss if it failed to consider and review the action of the inland wetlands agency with respect to property in a Flood Safety Zone.
The statutory mandate was followed in this instance, when the commission acted upon the request for a special permit to construct a sewage force main and a haul road through the wetlands.
The decision to deny the special permit finds abundant support in the record, and both of the commission's reasons for the denial are based upon the record compiled.
 CONCLUSION
Both appeals of the plaintiffs, Frank Galasso, Frances Galasso and Stephen J. Courtney, are dismissed.
Radcliffe, J.