[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I. Statement of the Case
Pursuant to General Statutes §§ 8-9 and 8-8 (b), the plaintiff, 661 Middle Turnpike Associates, appeals a decision of the defendant, the Planning and Zoning Commission of the Town of Mansfield, adopting numerous revisions to the town's zoning regulations and zoning map. These revisions were adopted by the defendant acting pursuant to the authority granted by Chapter 124 of the General Statutes, including §§ 8-2 and 8-3 (a) and (b) CT Page 5455
 II. Procedural History
The defendant's decision was published in The Chronicle on June 17, 1996. On July 1, 1996, the plaintiff commenced this appeal by service of process upon the town clerk of Mansfield and upon the chairperson of the Planning and Zoning Commission of Mansfield in accordance with §§ 8-8 (b) and (e). Following the defendant's request to revise filed on September 5, 1996, the plaintiff moved for an extension of time within which to respond to the request to revise, which motion was granted, Bishop, J., on August 15, 1996. The plaintiff filed an amended appeal on September 13, 1996. An answer was filed on October 22, 1996. The Return of Record was filed on December 27, 1996. The plaintiff's brief was filed on December 1, 1997, and the defendant's brief was filed on December 16, 1997. The court heard argument on March 8, 1999, and March 9, 1999.
 III. Facts
The plaintiff is the owner of property located at 661 Middle Turnpike, Mansfield, Connecticut, in an area commonly known as the "Four Corners" area due to its location near the intersection between Route 44 and Route 195.[1] The Four Corners area is approximately sixty acres in size. (Return of Record [ROR], Item 7, p. 89.) Prior to the zoning revisions which are the subject of this appeal, the Four Corners area, including the plaintiff's property, was zoned as "Planned Business I." (Amended Appeal, ¶ 1; Answer, ¶ 1.) Under this classification, approximately nineteen different kinds of business uses are permitted, including retail uses, shopping centers, banking, repair services, motels, restaurants, personal services, and professional offices. (ROR, Item 6, Article VII, § L.)
On November 4, 1995, and again on November 8, 1995, the defendant published in the Willimantic Chronicle a notice of its intent to hold a public hearing on November 16, 1995, for the purpose of eliciting comments on proposed revisions to the town's zoning regulations and zoning map. (ROR, Item 1.) The notice stated that "[t]he proposed revisions are extensive" and "involve over 50 areas of Ethel town and include numerous proposed revisions to residential zone classifications and new or revised zone classifications for most commercial areas in Mansfield." (ROR, Item 1.) The notice also stated that the revisions "are proposed to address Mansfield's 1993 Plan of Development, to clarify existing provisions and to promote public health, safety, CT Page 5456 convenience and welfare." (ROR, Item 1.)
One of the proposed revisions was a rezoning of the Four Corners area, including the plaintiff's property, from "Planned Business I" to "Professional Office I." (Amended Appeal, ¶ 1; Answer, ¶ 1.) Under the "Professional Office I" classification, generally three uses are permitted, namely, professional offices, a dwelling unit, and day care facilities. (ROR, Item 5, Draft of Proposed Article VII, pp. 32-33.)
The public hearing was held on November 16, 1995, and was continued to three other dates, November 28, 1995, January 29, 1996, and February 21, 1996. (Amended Appeal, ¶ 1; Answer, ¶ 1.) Notice of these continuation hearings was published in theWillimantic Chronicle on November 16 and 22, 1995, January 16 and 24, 1996, and February 7 and 15, 1996, respectively. (ROR, Item 1.)
The plaintiff, represented by its attorney, was an active participant in the public hearing, taking the opportunity to briefly comment at the November 16, 1995, hearing; (ROR, Item 8, Public Hearing, November 16, 1995, pp. 59-62); and to make an extensive presentation, which included the professional testimony of a traffic engineer and a land planner, at the January 29, 1996, hearing; (ROR, Item 8, Public Hearing, January 29, 1996, pp. 52-83). The plaintiff, who wished to market its property as appropriate for retail activity, a use permitted under the "Planned Business I" classification but not under the proposed "Professional Office I" classification, took a position in opposition to the zone change. (ROR, Item 8, Public Hearing, January 29, 1996, p. 59.)
The public hearing was closed on February 21, 1996. (Amended Appeal, ¶ 1; Answer, ¶ 1.) The defendant then proceeded, over the course of six special meetings on March 20, 1996, March 26, 1996, April 3, 1996, April 22, 1996, June 5, 1996, and June 6, 1996, to review and discuss the written and oral communications received at the public hearing and to vote on the proposed revisions to the zoning regulations and zoning map. (ROR, Item 24.) In particular, the minutes from the April 3, 1996, special meeting indicate that "the Four Corners area proposed to be rezoned from PB-1 to PO-1" was specifically discussed at this time. (ROR, Item 24, Minutes, April 3, 1996, pp. 1-2.) The minutes further note that the public hearing testimony given on November 16, 1995, and January 29, 1996, was among the communications received regarding CT Page 5457 the proposed zone change to this area and that "[d]iscussion . . . focused on the communications [received]; many of these cited greater need for retail space." (ROR, Item 24, Minutes, April 3, 1996, p. 1.) It was noted that "[p]rofessional testimony and documentation must be carefully considered in all cases where it is presented." (ROR, Item 24, Minutes, April 3, 1996, p. 1.) Finally, with regard to the plaintiff's property, the minutes indicate that the "[h]igh water table at 661 Middle [Turnpike] . . . which might limit commercial development" was "noted." (ROR, Item 24, Minutes, April 3, 1996, p. 2.)
The proposed zone change to "Professional Office I" of the Four Corners area encompassing the plaintiff's property was voted on at the special meeting of June 5, 1996. (ROR, Item 24, Minutes, June 5, 1996, p. 11.) The minutes from this meeting indicate that the vote was seven to two in favor of the new classification. (ROR, Item 24, Minutes, June 5, 1996, p. 11.) The following statement was incorporated by reference as part of the vote adopting the revision to the Four Corners area: "The Planning and Zoning Commission (PZC) has reviewed and considered all Public Hearing testimony and communications . . . . Furthermore, the revision . . . has been adopted because the PZC has found a need, based in part on a comprehensive analysis and subsequent 1993 revision of the Town's Plan of Development, to clarify existing provisions of the Mansfield Zoning Regulations and to adopt an updated and revised Zoning Map for the Town to promote the public health, safety, convenience and welfare of the public and to promote consist[e]ncy with the goals and objectives of the 1993 Plan of Development. The revised Mansfield Plan of Development includes updated information and recommended State and regional policies regarding the protection of natural resources and surface and ground water areas including those areas within the watershed of the Willimantic Reservoir; information on the specific character and interrelationship of Mansfield's historic areas, commercial areas and neighboring residential areas, and information regarding energy-efficient development and related transportation factors." (ROR, Item 24, Minutes, June 5, 1996, pp. 1-2.) The defendant published notice of its decision regarding the proposed revisions to the zoning regulations and zoning map in the WillimanticChronicle on June 17, 1996. (ROR, Item 25.)
 IV. Issues CT Page 5458
The plaintiff raises four separate issues in support of its claim that the defendant acted illegally, arbitrarily, or in abuse of its discretion. The plaintiff argues that (1) the defendant violated General Statutes § 8-3 (a) and Article 13 of the Mansfield Zoning Regulations by failing to provide notice by mail to the plaintiff containing the defendant's reasons for the proposed revisions; (2) the defendant failed to disclose the specific basis for the proposed zone change to the plaintiff's property thereby depriving the plaintiff of the opportunity to cross-examine and rebut the information upon which the defendant relied; (3) the defendant improperly relied on general information provided in the Plan of Development rather than making specific findings on the record to support the zone changes; and (4) the defendant's actions constituted a regulatory taking for which the plaintiff is entitled just compensation.
 V. Discussion A. Jurisdictional Requirements 1. Aggrievement
This appeal is brought pursuant to General Statutes § 8-9 and § 8-8 (b). Section 8-9 provides that appeals from decisions of municipal planning and zoning commissions may be taken to the superior court, while § 8-8 (b) limits such appeals to persons who are aggrieved by the commission's decision. Aggrievement is a question of subject matter jurisdiction and must be alleged and proved as a prerequisite to maintaining an appeal. See WinchesterWoods Associates v. Planning Zoning Commission, 219 Conn. 303,307, 592 A.2d 953 (1991); DiBonaventura v. Zoning Board ofAppeals, 24 Conn. App. 369, 373, 588 A.2d 244 (1991). At oral argument, the parties stipulated that the plaintiff owns property which was affected by the zoning revisions adopted by the defendant. An owner of affected property is aggrieved and entitled to bring an appeal. See Winchester Woods Associates v.Planning Zoning Commission, supra, 308; Cole v. Planning Zoning Commission, 30 Conn. App. 511, 515, 620 A.2d 1324 (1993). Thus, it is found that the plaintiff is aggrieved and has standing to prosecute this appeal.
 2. Timeliness
In compliance with General Statutes § 8-8 (e), the plaintiff served process on the chairperson of the planning and zoning CT Page 5459 commission and on the town's clerk. (Sheriff's Return.) In compliance with § 8-8 (b), process was served according to § 8-8
(e) on July 1, 1996; (Sheriff's Return); within fifteen (15) days of the publication of the defendant's decision on June 17, 1996. This appeal is therefore timely.
 B. Standard of Judicial Review
The standards governing judicial review in zoning appeals are well settled. Local zoning authorities, in enacting or amending their regulations, act in a legislative rather than an administrative capacity. See Parks v. Planning ZoningCommission, 178 Conn. 657, 660, 425 A.2d 100 (1979). Acting in a legislative capacity, the defendant has "wide and liberal" discretion; Burnham v. Planning Zoning Commission,189 Conn. 261, 266, 455 A.2d 339 (1983); and "is free to amend its regulations `whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change'"; Parks v. Planning Zoning Commission, supra. On appeal, a trial court is not at liberty to substitute its judgment for that of a local authority which is acting within its legislative powers. See Frito-Lay. Inc. v. Planning ZoningCommission, 206 Conn. 554, 572-73, 538 A.2d 1039 (1988). "Conclusions reached by [a zoning] commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [commission]. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the [commission] supports the decision reached." (Internal quotation marks omitted.) West Hartford Interfaith Coalition,Inc. v. Town Council, 228 Conn. 498, 513, 636 A.2d 1342 (1994).
"`Where a zoning [commission] has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record . . . . The zone change must be sustained if even one of the stated reasons is sufficient to support it. . . .' Protect Hamden/North Haven fromExcessive Traffic Pollution, Inc. v. Planning ZoningCommission, 220 Conn. 527, 544, 600 A.2d 757 (1991)." WestHartford Interfaith Coalitions Inc. v. Town Council, supra,228 Conn. 513. "Thus, `where a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement . . . [and] attempt to search out and speculate upon other reasons which might have influenced some CT Page 5460 or all of the members of the commission to reach the commission's final collective decision.' DeMaria v. Planning ZoningCommission, 159 Conn. 534, 541, 271 A.2d 105 (1970)." Id.
"Where, however, the zoning commission fails to present a formal collective statement of reasons the court must `search the entire record to find a basis for the commission's decision . . . .' Parks v. Planning Zoning Commission,178 Conn. 657, 662, 425 A.2d 100 (1979). In such a case, individual reasons `given by certain members of the commission [do] not amount to a formal, collective, official statement of the commission';Protect Hamden/North Haven from Excessive Traffic Pollution,Inc. v. Planning Zoning Commission, supra, [220 Conn.] 545; and `are not available to show the reason[s] for, or the ground[s] of, the [commission's] decision.' Welch v. Zoning Board of Appeals,158 Conn. 208, 214, 257 A.2d 795 (1969)." Id., 514.
 C. The Plaintiff's Arguments 1. Sufficiency of Notice
The plaintiff first claims that the defendant violated General Statutes § 8-3 (a) and Article 13 of the Mansfield Zoning Regulations by failing to notify the plaintiff by mail of the proposed zoning revisions and the reasons therefore. Section 8-3
(a) provides in relevant part: "Such zoning commission shallprovide for the manner in which regulations under section 8-2 andthe boundaries of zoning districts shall be respectivelyestablished or changed. No such regulation or boundary shall become effective or be established or changed until after a public hearing . . . at which parties in interest and citizens shall have an opportunity to be heard. Notice of the time andplace of such hearing shall be published in the form of a legaladvertisement appearing in a newspaper having a substantialcirculation in such municipality at least twice at intervals of not less than two days, the first not more than fifteen days nor less than ten days, and the last not less than two days, before such hearing, and a copy of such proposed regulation or boundary shall be filed in the office of the town . . . for public inspection at least ten days before such hearing, and may be published in full in such paper. In addition to such notice, suchzoning commission may, by regulation, provide for notice by mailto persons who are owners of land which is included in oradjacent to the land which is the subject of the hearing." (Emphasis added.) CT Page 5461
In compliance with the statutory mandates of § 8-3 (a), the defendant provided the procedure by which amendments to the zoning map and zoning regulations may be made in Article 13 of the Mansfield Zoning Regulations. (ROR, Item 6.) Article 13(A) provides two methods by which the regulations and/or the zoning map may be amended, namely, "either on the initiative of theCommission or by petition from property-owners or residents of the Town of Mansfield." (Emphasis added.) Article 13(A) further provides that "[p]etitions for amendments must include all required application materials (see Section B below) . . . ." (Emphasis added.) Article 13(B), entitled "Application Requirements," provides in relevant part: "Petitions to amend the Zoning Regulations and/or Zoning Map shall include the following information: . . . 2. Statement of Justification for the proposed regulation amendment, or Zoning Map change. Said statement . . . should substantiate: the compatibility of the proposal with respect to the Mansfield Plan of Development; the reasons for the particular change(s) ; and the effects such a change would have on the health, safety, welfare, and property values of Mansfield residents." (Emphasis added.) Article 13(C), entitled "Notification of Neighboring Property Owners, " provides in relevant part: "To ensure ample opportunity for neighborhood opinion to be expressed, the applicant shall be responsible for notifying in writing all property-owners within 500 feet of the perimeter boundaries of the subject zone change area. Such notice, which shall be sent [by] certified mail at least 10 days prior to the date of the scheduled Public Hearing, shall include the Statement of Justification received by the Commission . . . . A copy of the applicant's notice to neighboring property owners, a listing of the property owners notified and return receipts from the certified mailings shall be filed in the Mansfield Planning Office at least five (5) days prior to the Public Hearing." (Emphasis added.)
In the present case, it is undisputed that the defendant complied with the requirements of General Statutes § 8-3 (a) regarding notice by newspaper publication of the public hearing. The issue is whether the defendant was required by Article 13 to provide notice of the proposed revisions to the plaintiff by certified mail, including in such notice a "Statement of Justification" for the revisions. For the reasons discussed below, the court finds that it was not.
It is clear that Article 13's requirement of certified mail CT Page 5462 notice which includes the "Statement of Justification" is intended to apply to the situation when amendments to the regulations or map are proposed by petition from property-owners or residents. The "Statement of Justification" is an application requirement, and certified mail notification is made the responsibility of "the applicant." In the present case, it is undisputed that the amendments to the zoning regulations and zoning map were proposed on the initiative of the Commission; there was neither an applicant nor a petition. Nowhere in Article 13 is there a requirement that the commission, when it initiates amendments, create a "Statement of Justification." Nor is there a requirement that the commission must provide certified mail notice. Thus, the defendant did not violate Article 13.
The plaintiff, however, claims that although § 8-3 (a) provides that "such zoning commission may, by regulation, provide for notice by mail, " the statute does not authorize the defendant to "exempt" itself from a regulation's notice by mail provision by limiting the regulation's application to petitions from property owners or residents. Being a creature of statute, the plaintiff argues, the defendant cannot do that which it is not authorized to do by statute.
The statutory provision authorizing a commission to provide for notice by mail is permissive not mandatory. The defendant is not required to provide for any notice by mail at all. In choosing to do so, then, it was free to make its notice by mail regulation as limited or as broad in applicability as it thought prudent. In this case, the defendant chose to provide for mail notice only when amendments are proposed by way of petitions from property owners or residents. Such a regulation is authorized by § 8-3 (a) but is inapplicable under the present circumstances since the amendments were proposed not by petition from a property owner or resident but on the initiative of the commission. It is sufficient that the defendant properly complied with the statutory mandate of notice by newspaper publication.
For the sake of argument, even if the defendant had violated Article 13, "any defect in personal notice was waived because the [plaintiff], represented by counsel, appeared at the hearing and failed to object to the lack of notice." Dram Associates v.Planning Zoning Commission, 21 Conn. App. 538, 544,574 A.2d 1317, cert. denied, 215 Conn. 817, 576 A.2d 544 (1990); see also Schwartz v. Hamden, 168 Conn. 8, 14-15, 357 A.2d 488
(1975). In CT Page 5463Dram Associates v. Planning Zoning Commission, supra, the plaintiffs claimed that the commission had failed to supply actual notice to all the plaintiffs in compliance with the town's zoning regulations. See id., 544. The regulations required, "in addition to constructive notice by legal advertisements, notice by certified mail to each owner of property within the boundaries of a proposed zone change." Id. The court, holding that any defect had been waived by the plaintiffs' failure to object at the hearing, dismissed the plaintiffs' appeal. See id.
In this case, a reading of the transcripts from the four dates over which the public hearing was held reveals an absence of any objection whatsoever from the plaintiff related to insufficiency of notice. Furthermore, no claim is made that the plaintiff was prejudiced in any way by the lack of notice by mail, such as a claim that the plaintiff had inadequate time in order to prepare for the public hearing. The transcript reveals an appearance by the plaintiff through its counsel who made an extensive presentation of the plaintiff's position, a presentation which included professional testimony and reports from a traffic engineer and land planner. Thus, any defect in notice must be deemed waived. See Schwartz v. Hamden, supra,168 Conn. 114-15; Dram Associates v. Planning Zoning Commission, supra, 21 Conn. App. 544.
 2. Sufficiency of Defendant's Disclosure of Reasons
The plaintiff next claims that the procedure followed by the commission at the public hearing violated its due process rights in two ways. First, the plaintiff argues that the commission remained silent about its reasoning for the proposed revisions at the public hearing, thereby improperly failing to provide testimony specific to the plaintiff's property and to disclose the basis for the zone change. Second, the plaintiff argues that the sole comment specific to the plaintiff's property was made by a single commission member during the deliberation of the proposed revisions after the public hearing was closed, thereby depriving the plaintiff of the opportunity to cross-examine or rebut the member's comment.
 (a)
The plaintiff's argument concerning the silence of the defendant at the public hearing is based on the preliminary CT Page 5464 comments of the chairperson of the commission in opening the public hearing: "Tonight the members are here to listen and not make comments to you so we want to hear your comments and we know that we've provided you, apparently, with so much information that some of you are a little confused, -and we are certainly going to continue this hearing so that everyone will get a chance to make comments and also if you have time to study all of this work." (ROR, Item 8, Public Hearing, November 16, 1995, p. 7.) At one of the continuation dates of the hearing, the chairperson reiterated: "Our job as a Planning and Zoning Commission tonight as members is to sit and listen to you and your comments and to then take them into consideration before we consider any adoption of anything." (ROR, Item 8, Public Hearing, November 28, 1995, p. 7.) Another commission member stated: "The purpose of this hearing is to receive comments from the public . . . . In this type of legislative hearing, it is not appropriate for Planning 
Zoning Members to comment on or discuss any of the public comments." (ROR, Item 8, Public Hearing, January 29, 1996, p. 8.)
"Public hearings play an essential role in providing a forum for citizens to give their views on proposed zoning changes."Dram Associates v. Planning Zoning Commission, supra,21 Conn. App. 543. "The public has the right to know and test the sufficiency of the facts upon which a commission bases its action." Id. However, "[c]ourts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their action." (Internal quotation marks omitted.) Frito-Lay.Inc. v. Planning Zoning Commission, supra, 206 Conn. 573. "Such caution is particularly appropriate when reviewing the decision of a local [zoning] commission composed of laypersons whose procedural savoir-faire may not rise to the sophisticated level needed to achieve strict compliance with the statutory directions under which they operate." DeBeradinis v. Zoning Commission,228 Conn. 187, 198-99 n. 7, 635 A.2d 1220 (1994).
The preliminary statements concerning the procedure to be followed at the public hearing, however, cannot be interpreted as a refusal by the commission to disclose the reasons upon which the proposed zoning revisions were based. In fact, the commission did disclose the basis for the revisions. The commission expressly stated numerous times during the course of the public hearing that the rationale for the proposed revisions was included in the town's recently updated Plan of Development. For example, the town planner stated: "I think that the main CT Page 5465 objective of this public hearing is to hear the comments from the citizens but I think it is important to give a little back-ground data on how these proposed changes came about. As many of you know, the Planning and Zoning commission worked very diligently on updating its Plan of Development, and in 1993 after more than two years of work the Commission did adopt a new Plan of Development for the Town. And this Plan of Development is the basic bit of information and the resource that prompted most of the changes that we have before you. This Plan of Development is available in the Planning Office, it's available at the Libraries for any of you who are studying these issues I certainly encourage you to take a look at the Plan of Development. In addition, as part of the Plan of Development study, the State Plan of Conservation and Development, the Policy Plan 1992 to 1997 was a major document that was reviewed. . . . And in addition . . . the Department of Environmental Protection, in 1990, prepared a document that is called Carrying Capacity ofPublic Water Supply Watersheds — A literature review of impacts onwater quality for residential development. And there is a lot of information in here that did help mold some of the recommendations in the Plan of Development. This is another important document that if you would like to look at it, it is available for review in the Planning Office." (ROR, Item 8, Public Hearing, November 16, 1995, pp. 11-12.) The chairperson also stated at the same hearing that the proposals "are recommendations that are based on a lot of information that's in the Plan of Development which took a fair amount of time and had public hearings before that was adopted." (ROR, Item 8, Public Hearing, November 16, 1995, p. 10.)
Additionally, at one of the continuation hearings, the town planner reiterated: "The changes that are being proposed are a direct result . . . of Mansfield's adoption of a revised Plan of Development in 1993. This Plan of Development was based on multiple years of study, looking at all the physical aspects and historic aspects of the Town, looking at previous Plans of Development, looking at the State Plan of Conservation [and] Development and numerous publications and information the Commission has received in the decade since the 1982 plan was prepared." (ROR, Item 8, Public Hearing, January 29, 1996, pp. 9-10.)
There is no question, therefore, that the public, including the plaintiff, was expressly referred by the commission to the Plan of Development for information concerning the rationale for CT Page 5466 the proposed changes. The issue, then, is whether the information provided in the Plan of Development sufficiently discloses the reasons for the commission's decision to rezone the Four Corners area from "Planned Business I" to "Professional Office I." The Plan of Development having been made part of the record; (ROR, Item 7); the court thus may properly include the Plan in its search of the entire record to find a basis for the commission's decision to rezone the Four Corners area. See West HartfordInterfaith Coalition, Inc. v. Town Council, supra, 228 Conn. 514;Parks v. Planning Zoning Commission, supra, 178 Conn. 662.
The court initially makes the following observations regarding the Mansfield Plan of Development, adopted in accordance with the provisions of General Statutes § 8-23.[2]
As the Plan indicates, its preparation involved multiple years of studying the contributions from numerous experts and professionals, including historians, geologists, archaeologists, and engineers, as well as publications of numerous state agencies including the departments of Environmental Protection, Public Works, Transportation, and Natural Resources Management and Engineering.[3] Much mention is made throughout the Plan of numerous, general policy goals and objectives intended to be served by its recommendations for present and future land use. These goals include promoting an energy efficient pattern of development; protecting and preserving natural, historic, and agricultural resources; ensuring vehicular and pedestrian safety; and protecting residential and historic areas from potentially detrimental land use. (ROR, Item 7, pp. 12, 44-45, 65-68.)
The Plan, however, provides much more than general policy goals, objectives, and recommendations for present and future land use. The Plan also contains detailed and specific factual findings regarding the historical, environmental, and other physical characteristics of various geographical areas of the town. One such area is specifically the Four Corners area in which the plaintiff's property is located. (ROR, Item 7, pp. 89-90.) Additionally, the nature and purpose of designated zoning classifications, including "Planned Business" and "Professional Office, " are discussed and explained. (ROR, Item 7, pp. 84, 94.) For purposes of this appeal, these pertinent sections of the Plan of Development are as follows.
With regard to the Four Corners area specifically, the Plan recites the following facts: "The Four Corners area is dependent on onsite wells and septic systems and there are no current plans CT Page 5467 to extend public sewer and water service to this area. . . . [I]t contains significant areas with poorly-drained soils, designated wetlands and a high water table. Ground water quality problems have occurred due to leaking underground fuel storage tanks and a number of existing uses in this area utilize water filtration systems. High volumes of vehicular traffic, primarily to and from the University of Connecticut, utilize Routes 195 and 44 in the Four Corners District. . . . However, due to the area's physicalcharacteristics and its lack of existing or anticipated publicsewer and water systems, this district has limited potential foradditional intensive commercial development." (Emphasis added.) (ROR, Item 7, pp. 89-90.)
With regard to the "Planned Business" classification, the Plan reflects the finding that such a classification is appropriate in areas "served by sanitary sewers and a publicwater supply and, therefore, higher commercial densities and anextensive range of commercial services, including facilitiesutilizing large volumes of water, are possible . . . ." (Emphasis added.) (ROR, Item 7, p. 86.) With regard to the "professional Office" classification, the Plan finds: "This classification isappropriate in locations where a Planned Business designationcould be problematic because most office uses are notcharacterized by the traffic and sanitary issues associated withother commercial uses." (Emphasis added.) (ROR, Item 7, p. 94.)
Based upon the commission's factual findings included in detail in the Plan of Development with regard to the characteristics of the Four Corners area, it is clear that the commission's purpose in rezoning the area from commercial use to office use was to deintensify the uses in the Four Corners area. By rezoning the area as "professional Office, " a classification which was "designed to provide for lower-intensity office uses"; (ROR, Item 7, p. 84); it is evident that the commission's intent was to scale back the previously permitted nineteen types of commercial uses to a residential dwelling and two types of office uses. The reasons for the zone change to the Four Corners area, therefore, were adequately disclosed in the Plan of Development.
The proposed changes were extensive, and in the interest of conducting an efficient public hearing, the commission saw fit to refer the public to the Plan of Development for information concerning the rationale for the proposed revisions. Otherwise, to state the specific reasons for each and every proposed revision at the public hearing would in effect result in a CT Page 5468 unnecessary and time consuming virtual verbatim reading of the Plan of Development. The town planner articulated this concern when he stated: "The comments were made if should we provide more information on the reasons why these changes are proposed. . . . I'm really just going to rely on the Plan of Development and I can stand up there and read clauses from the Plan of Development or take notes and try to paraphrase them, but I'm not sure that that's needed at this time."[4] (ROR, Item 8, November 16, 1995, p. 57.)
If the plaintiff, after having been referred to the Plan of Development, still had questions concerning the reasons for the proposed zone change of the area within which its land is situated, it certainly had ample opportunity to ask them during the public hearing. The commission several times during the public hearing announced its willingness to answer questions from the public, designating the town planner as the member to whom to direct any questions. (See, e.g., ROR, Item 8, Public Hearings, November 28, 1955, p. 7; January 29, 1996, pp. 8, 9, 18; February 21, 1996, p. 15.) In addition, the town planner himself several times offered to answer questions from the public. (See, e.g., ROR, Item 8, Public Hearings, November 16, 1995, pp. 27-28; January 29, 1996, pp. 9, 18.)
Yet, the transcript is devoid of any indication that the plaintiff was unaware of the commission's reasons for the revisions. In fact, the transcript reveals otherwise. The plaintiff's own testimony during its extensive presentation indicates that it was very well aware of the problems that the commission was trying to address in rezoning the Four Corners area. For example, the plaintiff offered the testimony of a land planner, who stated: "The underlying concerns for this area is seem to relate to both water quantity and water quality. We have a high water table, we have some poorly drained soils and we have some problems in this general area with water quality. The Plan of Development talks about restricting uses in this general area to non-water intensive uses." (ROR, Item 8, Public Hearing, January 29, 1996, p. 74.) Thus, it can hardly be contended that the plaintiff was denied knowledge of or the opportunity to respond to or rebut the commission's findings concerning the high water table, poorly drained soils, traffic, and the need to deintensify the uses permitted in the Four Corners area when these are precisely the issues thoroughly addressed — in fact by professionals — during the plaintiff's presentation at the public hearing. (See ROR, Item 8, Public Hearing, January 29, 1996, pp. CT Page 546952-83.)
Thus, the plaintiff's claim that the commission failed to disclose the reasons for rezoning the Four Corners area from "Planned Business I" to "Professional Office I" must be rejected. A reading of the Plan of Development reveals that the commission's decision to rezone the area was based upon specific factual findings with regard to the physical and environmental characteristics of the Four Corners area. Based upon these characteristics, the need to deintensify the uses in the Four Corners area was identified. By referencing the Plan of Development and the rationale contained therein, the commission sufficiently disclosed explicit reasons for the zoning change.
 (b)
The second part of the plaintiff's claim is that its due process rights were violated because, the plaintiff argues, the sole comment specific to the plaintiff's property evincing a reason for the zoning change was made by a single commission member during the deliberation of the proposed revisions after the public hearing was closed, thereby depriving the plaintiff of the opportunity to cross-examine or rebut the member's comment. The plaintiff bases this argument upon the simple notation in the minutes: "High water table at 661 Middle Tpk. was noted, which might limit commercial development." (ROR, Item 24, Minutes, April 3, 1996, p. 2.)
It is true that individual reasons advanced by certain members of the commission are not available to show the reasons for, or the grounds of, the commission's decision. See WestHartford Interfaith Coalition. Inc. v. Town Council, supra,228 Conn. 514. It is also true that the commission may not consider ex parte testimony in determining whether to approve a zoning change. See Pizzola v. Planning Zoning Commission,167 Conn. 202, 207-208, 355 A.2d 21 (1974).
As previously discussed, however, the commission made it clear that its decision concerning the zoning revisions was based on information contained in the Plan of Development. Moreover, I nothing in the minutes indicates that the above quoted notation was a comment made by a specific member of the commission that the commission received as evidence upon which to base its decision. Instead, the minutes referenced by the plaintiff record the commission's deliberation of the proposal to rezone the Four CT Page 5470 Corners area. It clearly was considering all the evidence and communications that the public, including the plaintiff, offered during the public hearing. There is nothing in the minutes from which it could be concluded that the commission improperly received ex parte evidence or that its decision to rezone the area was based upon reasons advanced by a single member.
Indeed, that 661 Middle Turnpike has a high water table was evidence offered by the plaintiff itself at the public hearing when it offered the professional testimony of a land planner who stated: "The underlying concerns for this area is seem to relate to both water quantity and water quality. We have a high watertable, we have some poorly drained soils and we have someproblems in this general area with water quality." (Emphasis added.) (ROR, Item 8, Public Hearing, January 29, 1996, p. 74.) Thus, by the plaintiff's own testimony, not only was the plaintiff clearly aware of the specific problems, and in particular the problem of a high water table, that the commission was trying to address, it acknowledged its awareness of the problems and made no attempt whatsoever to rebut the fact of a high water table when it clearly had the opportunity to do so if it so wished. Its argument, therefore, is without merit.
 3. Reliance on the Plan of Development
The plaintiff next claims that the commission's reliance on the Plan of Development as the basis for the zoning revisions was improper. The plaintiff argues that the Plan of Development is merely advisory and, as such, may not be the final pronouncement of the reasons to support the zoning revisions. The plaintiff further argues that the Plan of Development provides only general information and not information specific to 661 Middle Turnpike or the reasons why the zoning of this particular piece of property ought to be changed.
 (a)
The plaintiff is correct in its claim that the Plan of Development, or Master Plan, developed in accordance with General Statutes § 8-23, is not mandatory but merely advisory. See Smithv. Zoning Board of Appeals, 227 Conn. 71, 87, 629 A.2d 1089
(1993); Lathrop v. Planning Zoning Commission, 164 Conn. 215,223, 319 A.2d 376 (1973); Dooley v. Planning ZoningCommission, 154 Conn. 470, 473, 226 A.2d 509 (1967). "The purpose of the plan is to set forth the most desirable use of land and an CT Page 5471 overall plan for the town." Smith v. Zoning Board of Appeals, supra, 88. However, [t]he overall objectives contained in the town plan must be implemented by the enactment of specific regulations." Id.
That the Plan of Development is merely advisory, however, is certainly not to say that it is unimportant. General Statutes §8-2 requires that zoning regulations "shall be made in accordance with a comprehensive plan and in adopting such regulations the commission shall consider the plan of conservation and development prepared under section 8-23." Moreover, in addition to requiring consideration of the plan, the legislature has explicitly encouraged a policy of conformance
with the recommendations made in the plan. Effective October 1, 1991, the legislature significantly increased the importance of the plan of development by mandating that a commission "state on the record its findings on consistency of a proposed zoning regulation or boundaries or changes thereof with the plan of development of the municipality." General Statutes § 8-3a.
No authority has been found to support the proposition that a commission when making zoning decisions may not rely on specific factual findings regarding the historical, environmental, and physical characteristics of particular areas of the town made and included in the Plan of Development after multiple years of studying reports and other documents contributed by numerous experts and professionals.[5] Indeed, it is simply illogical that having been statutorily compelled to create a plan of development; see General Statutes § 8-23; statutorily required to consider the plan when adopting regulations; see General Statutes § 8-2; and statutorily encouraged to act consistently with the plan; see General Statutes § 8-3a; a planning and zoning commission thereafter would be precluded from relying on specific findings and recommendations contained therein as a basis for amendments to the zoning regulations and zoning map. It is equally illogical to suggest that a planning and zoning commission may not rely on a plan of development simply because it is not compelled to do so.
"Where, as in [Mansfield] , the same commission functions in both planning and zoning, it is logical to assume that, when zoning changes are sought [or initiated, as in this case], the action of the commission would be guided by its own recommendations in the master plan, i.e., the manner in which the commission believes that the municipality should achieve CT Page 5472 coordinated development." Mott's Realty Corp. v. Planning Zoning Commission, 152 Conn. 535, 538, 209 A.2d 179 (1965). "In fact, consistency of a zoning commission's action with a plan of development has usually been recognized as a valid and proper reason to support the agency's action. [See] Calandro v. ZoningCommission, 176 Conn. 439, [441, 408 A.2d 229] (1979)." NationalAssociated Properties v. Planning Zoning Commission, Superior Court, judicial district of Hartford New Britain at Hartford, Docket No. 518954 (November 17, 1993, Mottolese, J.), aff'd,37 Conn. App. 788, 658 A.2d 114, cert. denied, 234 Conn. 915,660 A.2d 356 (1995); see also Boris v. Garbo Lobster Co.,Inc., Superior Court, judicial district of New London at New London, Docket No. 539867 (March 24, 1998, Purtill, J.); Greenev. Planning Zoning Commission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 442131 (January 6, 1993, Berger, J.). Thus, in light of the foregoing, the court rejects the plaintiff's claim that because the Plan of Development is merely advisory the commission improperly relied on it as a basis for the zoning revisions.
 (b)
That the commission may properly rely on the plan of development, however, does not obviate the well established rule that the reasons for the commission's decision must be reasonably supported by the record. See West Hartford Interfaith Coalition.Inc. v. Town Council, supra, 228 Conn. 513. The plaintiff argues that the Plan of Development provides only general information and not information specific to 661 Middle Turnpike or the reasons why the zoning of this particular piece of property ought to be changed. Thus, the plaintiff concludes, the general information contained in the Plan of Development provides insufficient support for the commission's decision.
Whether generalized information stated in a municipal plan of development may serve as the basis for a commission's decision is not an issue that needs to be addressed at this time because, here, it is clear that the commission has not relied on "general" information as the basis for its decision. As discussed previously, the Plan of Development does contain general policy goals, objectives, and recommendations. (See ROR, Item 7, pp. 12, 44-45, 65-68.) Nowhere does the record indicate, however, that the commission implicitly or explicitly advanced consistency with this general information as its sole basis for the changes. CT Page 5473 Rather, the commission's several references throughout the course of the public hearing to the Plan of Development were made with the intent to refer the public to the written document where the specific reasoning behind each proposed change and the specific factual findings upon which such reasoning rested could be found.
With regard to the zoning revision to the Four Corners area, the Plan of Development contains a section solely dedicated to discussing the district's physical and environmental characteristics, including its poor water quality and quantity, poorly drained soils, high water table, lack of public water and sewer systems, and high traffic volume. (See ROR, Item 7, pp. 89-90.) The commission's primary goal in rezoning the Four Corners area was to address these problems by deintensifying the uses in the area. (See ROR, Item 8, Public Hearing, February 21, 1996, pp. 15-16.) The "Professional Office I" classification was chosen based upon the commission's finding that "most office uses are not characterized by the traffic and sanitary issues associated with other commercial uses." (ROR, Item 7, p. 94.) Thus, the information provided by the Plan of Development is specific enough to provide sufficient support for the commission's decision to rezone the area.
 (c)
The plaintiff argues that the commission never offered any evidence to substantiate its finding that office uses are less intensive than commercial uses, and cites Primerica v. Planning Zoning Commission, 211 Conn. 85, 100, 558 A.2d 646 (1989), for the proposition that a connection between office use and less intensive water use must find support in the record. The plaintiff cites its own expert testimony offered during the public hearing that a medical office, a permissible "Professional Office I" use, might have a greater impact on water use than some retail uses permitted under the "Planned Business I" zone because a medical laboratory utilizes a relatively large amount of water for its operation. (ROR, Item 8, Public Hearing, January 29, 1996, pp. 74-75.)
Contrary to the plaintiff's contention, there was sufficient evidence produced at the public hearing to support the commission's finding that office uses are generally less water intensive than commercial uses. There was the. testimony of an attorney/real estate developer in relation to the Four Corners area who stated: "Many years ago I thought about developing . . . CT Page 5474 a commercial venture. But I know one thing about development, and that is that you [cannot] have intense development without the availability of water and sewer, and until the Water and Sewer Authority, which is the Town Council . . . [makes] those available to various sites, most properties are not going to be developed intensively. It's just, the ground [cannot] support heavy sub-surface sanitary sewage disposal in most instances." (ROR, Item 8, Public Hearing, January 29, 1996, p. 98.) There was also the plaintiff's own expert testimony that a retail building uses more water than an office building of the same square footage, albeit not significantly more, but more nonetheless. (ROR, Item 8, Public Hearing, January 29, 1996, pp. 74-75.) Finally, with the exception of a medical office building, each and every retail or commercial use cited by the plaintiff's expert in his report to the commission was, in fact, more water intensive than the average office building. (See ROR, Item 18, pp. 2-3.)
The plaintiff emphasizes the expert testimony it produced regarding medical offices as rebutting the presumption that office use is less intensive than commercial. However, "[am administrative agency is not required to believe any witness, even an expert, nor is it required to use any of the evidence presented to it in a particular manner. Manor Development Corp.v. Conservation Commission, 180 Conn. 692, 697, 433 A.2d 999
(1980)." Laufer v. Conservation Commission, 24 Conn. App. 708,716, 592 A.2d 392 (1991). In conducting its review, the court must defer to the commission's assessment of the credibility of the witnesses. See West Hartford Interfaith Coalition. Inc. v.Town Council, supra, 228 Conn. 513. Accordingly, the court finds from the record before it that the commission reasonably could have concluded that office uses are less water intensive than commercial or retail uses.
 (d)
The plaintiff also claims that the commission acted improperly by adopted the zone change to the Four Corners area without making findings with regard to the environmental and physical characteristics specific to its particular property located at 661 Middle Turnpike. The plaintiff points out that the Plan of Development likewise never states that any of the problems existing in the Four Corners area actually exist at 661 Middle Turnpike. Therefore, the plaintiff argues that the commission's decision to rezone its property is not supported by CT Page 5475 the record.
At this stage, it is enlightening to review the substance of the plaintiff's presentation before the commission at the public hearing held on January 29, 1996. The plaintiff's presentation focused on convincing the commission to keep its particular site, located at 661 Middle Turnpike, zoned as "planned Business I." (ROR, Item 8, Public Hearing, January 29, 1996, pp. 58-59, 82.) A primary emphasis of the plaintiff's presentation was that use of the plaintiff's property to build a supermarket would not be a significantly more intensive use than the average office use. In other words, the professional testimony offered by the plaintiff was primarily site-specific and project-specific. The testimony did not purport to be applicable to the Four Corners area as a whole.
The proposed zone change to the Four Corners area, however, applied not only to the plaintiff's property but to several other properties located in the 60 acre area previously zoned "Planned Business I." Although it appears that the plaintiff's primary motivation in opposing the zone change was its interest in marketing its property as appropriate for retail use to a potential supermarket developer, the plaintiff's possible future use of its property did not impose upon the commission an obligation to consider the proposed zone change as if it were site-specific and project-specific. See Protect Hamden/NorthHaven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, supra, 220 Conn. 547. "The commission was acting legislatively, and it was entitled to consider the proposed [zone change] in a context that went beyond [the plaintiff's] specific site and project." Id.
"[I]n making its decision regarding a zone change, [the commission] must consider the general public welfare inherent in the comprehensive zoning development plan rather than the individual benefit of one petitioner." Fenn v. Planning ZoningCommission, 24 Conn. App. 430, 436, 589 A.2d 3 (1991). One commission member commented during the public hearing on this precise issue: "We have heard the public, and my impression . . . is that a lot of those who have come before us are business people or property owners [whose] property particularly commercial property is directly affected. They are the public and they are entitled to be heard. But, our statutory responsibility is to the health, safety and welfare of [the] town, of everybody in the town. And it is right and proper that we pay regard to the CT Page 5476 business community as indeed we do, but we have to be careful that we don't — that in listening to what we hear we put it into the context of what our responsibility [is] to the town as a whole." (ROR, Item 8, Public Hearing, November 28, 1995, p. 47.)
The record here evinces that the commission acted with the intention of promoting the best interests of the community as a whole by taking into consideration the characteristics of the entire Four Corners area subject to the zone revision. To focus narrowly on the plaintiff's property and what would be in the best economic interest of the plaintiff would be improper, perhaps even subjecting the commission to the risk of being accused of engaging in illegal spot zoning. See Anderson v.Zoning Commission, 157 Conn. 285, 294, 253 A.2d 16 (1968) (spot zoning constitutes "an attempt to accommodate an individual property owner without any concern for the interests of the community"); Bartram v. Zoning Commission, 136 Conn. 89, 94,68 A.2d 368 (1949) ("The vice of spot zoning lies in the fact that it singles out for special treatment a lot or a small area in a way that does not further [the best interests of the community as a whole].") The court finds that the commission properly regarded the Four Corners district as a whole and was not required to analyze the problems in the district parcel by parcel or acre by acre in making findings sufficient to support its decision to rezone the area.
 4. Inverse Condemnation
The plaintiff's final claim is that the rezoning of its property from "Planned Business I" to "Professional Office I" constitutes a taking of property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article One of the Connecticut Constitution.
It is important at this juncture to note the distinction between the plaintiff's inverse condemnation claim and its administrative appeal pursuant to § 8-8. "A plaintiff's administrative appeal serves the remedial purpose of reviewing the propriety of the board's decision." Cumberland Farms. Inc. v.Groton, 247 Conn. 196, 207, 719 A.2d 465 (1998). "An administrative appeal cannot provide a monetary remedy to the plaintiff." Id. "By contrast, in an inverse condemnation action, a plaintiff alleges that a regulatory action constitutes a taking for constitutional purposes and seeks compensation for the CT Page 5477 alleged taking. An inverse condemnation action does not concern itself with the propriety of the board's action. The only inquiry is whether a taking has, in fact, occurred." Id., 207-08.
The question raised by the plaintiff's inverse condemnation claim "is not whether the zone change is rationally related to the exercise of the police power but whether, as applied to the [plaintiff's property] , it is so unreasonable and confiscatory as to constitute for all practical purposes a taking of private property for public use." D'Addario v. Planning ZoningCommission, 25 Conn. App. 137, 142, 593 A.2d 511 (1991). Therefore, the court's determination thus far that the defendant's adoption of the zoning revisions at issue in the present case was a valid and proper exercise of its police powers does not resolve the issue of whether the defendant's actions constituted an unconstitutional taking of property without just compensation.
General Statutes § 8-8 (k) provides in relevant part: "The court shall review the proceedings of the board and shall allow any party to introduce evidence in addition to the contents of the record if . . . it appears to the court that additional testimony is necessary for the equitable disposition of the appeal." With regard to an inverse condemnation claim, "[a] trial court may hear additional evidence on the constitutionality of a zoning regulation in order to dispose equitably of an administrative appeal when there was insufficient evidence introduced before the zoning commission from which the court could decide the issue." D'Addario v. Planning ZoningCommission, supra, 25 Conn. App. 140 n. 3.
Here, additional evidence is necessary because the plaintiff did not raise the inverse condemnation claim before the commission nor could it because it was not until after the commission had adopted the revision rezoning the Four Corners area that the plaintiff could claim that a taking had occurred. See D'Addario v. Planning Zoning Commission, supra,25 Conn. App. 140-41 n. 3. Indeed, pursuant to § 8-8 (k), the plaintiff has already moved to introduce additional testimony on regulatory taking issue, and the motion was granted, Sullivan, J., on February 2, 1998. The defendant, too, is in agreement that an evidentiary hearing and further briefing of this issue is required. (See Defendant's Memorandum, p. 5.) Thus, the court need not address this issue further at this time. CT Page 5478
 VI. CONCLUSION
For the foregoing reasons, the court finds that the decision of the defendant adopting the zone change at issue in this appeal is reasonably supported by the record. As such, the zone change must be upheld.
The court declines to rule on the plaintiff's inverse condemnation claim at this time as it is clear that further evidentiary proceedings are necessary for the equitable disposition of this claim.
BY THE COURT,
Kaplan, J.